**No. 25-4843**

# In the United States Court of Appeals for the Ninth Circuit

---

ANDREA BARTZ, ET AL.,

*Plaintiffs-Respondents,*

*v.*

ANTHROPIC PBC,

*Defendant-Petitioner.*

---

On Petition for Permission to Appeal from the United States District Court for the Northern District of California, Case No. 3:24-cv-05417-WHA
The Honorable William H. Alsup

---

**BRIEF OF AMICUS CURIAE NETCHOICE
IN SUPPORT OF PETITIONER ANTHROPIC PBC'S
PETITION FOR PERMISSION TO APPEAL UNDER RULE 23(F)**

---

Joshua P. Morrow
LEHOTSKY KELLER COHN LLP
408 W. 11th Street, 5th Floor
Austin, TX 78701

Scott A. Keller
Steven P. Lehotsky
Serena Orloff
Jeremy Evan Maltz
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave. NW,
Suite 700
Washington, DC 20001
(512) 693-8350
scott@lkcfirm.com

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

No. 25-4843

ANDREA BARTZ, ET AL.,
*Plaintiffs-Respondents*,
*v.*
ANTHROPIC PBC,
*Defendant-Petitioner*.

Under Federal Rule of Appellate Procedure 26.1, NetChoice certifies that it has no parent corporation, and that no publicly held company owns 10% or more of its stock.

<u>/s/ *Scott A. Keller*</u>
Scott A. Keller
*Counsel for Amicus Curiae*

i

# TABLE OF CONTENTS

Corporate Disclosure Statement ........................................................... i

Table of Authorities ............................................................................ iii

Interest of Amicus Curiae ................................................................... 1

Introduction ........................................................................................ 2

Argument ............................................................................................. 4

    I.   The Copyright Clause and the fair use doctrine safeguard
        First Amendment interests ...................................................... 4

    II.  Users have a strong First Amendment interest in accessing
        generative AI services, which are tools for producing
        expression. ............................................................................... 6

    III. These First Amendment interests warrant interlocutory
        review under Rule 23(f). ......................................................... 8

Conclusion ........................................................................................... 10

Certificate of Service .......................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis,*
   600 U.S. 570 (2023) ........................................................................ 6

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,*
   598 U.S. 508 (2023) ..................................................................... 3, 5

*Bartz v. Anthropic PBC,*
   2025 WL 1741691 (N.D. Cal. June 23, 2025)................................. 2

*Bose Corp. v. Consumers Union of U.S., Inc.,*
   466 U.S. 485 (1984) ................................................................... 4, 10

*Bouchat v. Baltimore Ravens Ltd. P'ship,*
   737 F.3d 932 (4th Cir. 2013)........................................................... 5

*Brown v. Entm't Merchs. Ass'n,*
   564 U.S. 786 (2011) ........................................................................ 7

*Buckley v. Valeo,*
   424 U.S. 1 (1976) ........................................................................... 8

*Chamberlan v. Ford Motor Co.,*
   402 F.3d 952 (9th Cir. 2005)........................................................... 9

*Citizens United v. FEC,*
   558 U.S. 310 (2010) ........................................................................ 7

*Dombrowski v. Pfister,*
   380 U.S. 479, 486 (1965) ............................................................... 9

*Eldred v. Ashcroft,*
   537 U.S. 186 (2003) ..................................................................... 3, 4

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ................................................................. 4

*First Nat'l Bank of Bos. v. Bellotti*,
    435 U.S. 765 (1978) ................................................................. 7

*Fox v. Saginaw Cnty.*,
    35 F.4th 1042 (6th Cir. 2022) ............................................. 2, 9

*Golan v. Holder*,
    565 U.S. 302 (2012) ............................................................. 3, 4

*Green v. United States Dep't of Just.*,
    111 F.4th 81 (D.C. Cir. 2024) ................................................ 5

*Hill v. Colorado*,
    530 U.S. 703 (2000) ................................................................. 8

*Houchins v. KQED, Inc.*,
    438 U.S. 1 (1978) ..................................................................... 7

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
    515 U.S. 557 (1995) ................................................................. 6

*Hustler Mag. Inc. v. Moral Majority Inc.*,
    796 F.2d 1148 (9th Cir. 1986) ................................................ 5

*Joseph Burstyn, Inc. v. Wilson*,
    343 U.S. 495 (1952) ................................................................. 7

*Kadrey v. Meta Platforms, Inc.*,
    2025 WL 1752484 (N.D. Cal. June 25, 2025) ........................ 9

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
    856 F.3d 106 (D.C. Cir. 2017) ............................................. 2, 9

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir. 2003) ................................................. 5

iv

*Kleindienst v. Mandel,*
    408 U.S. 753 (1972) ........................................ 7

*Martin v. City of Struthers,*
    319 U.S. 141 (1943) ........................................ 7

*McGucken v. Pub Ocean Ltd.,*
    42 F.4th 1149 (9th Cir. 2022) ........................ 5

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue,*
    460 U.S. 575 (1983) ........................................ 8

*NAACP v. Button,*
    371 U.S. 415 (1963) ...................................... 10

*Nat'l Socialist Party of Am. v. Vill. of Skokie,*
    432 U.S. 43 (1977) ......................................... 9

*Rubin v. Coors Brewing Co.,*
    514 U.S. 476 (1995) ........................................ 6

*Sega Enters. Ltd. v. Accolade, Inc.,*
    977 F.2d 1510 (9th Cir. 1992) ........................ 5

*Sorrell v. IMS Health Inc.,*
    564 U.S. 552 (2011) ..................................... 6, 7

*Stanley v. Georgia,*
    394 U.S. 557 (1969) ........................................ 7

*VHT, Inc. v. Zillow Grp., Inc.,*
    918 F.3d 723 (9th Cir. 2019) ......................... 5

## Other Authorities

Eugene Volokh, Mark A. Lemley & Peter Henderson, *Freedom of Speech and AI Output*, 3 J. Free Speech L. 651 (2023) ................................. 8

Jane Bambauer, *Is Data Speech?*, 66 Stan. L. Rev. 57 (2014) ............................. 7

U.S. Const. art. I, § 8, cl. 8 ................................................................ 3, 4

U.S. Const. amend. I. ........................................................................ 3, 4

## INTEREST OF AMICUS CURIAE

NetChoice is a national trade association of online businesses that share the goal of promoting free enterprise and free expression on the Internet.[1] A list of NetChoice's members is available at https://tinyurl.com/4r74ryre. NetChoice fights to ensure the internet remains innovative and free. Toward those ends, NetChoice engages in litigation, amicus curiae work, and political advocacy. NetChoice has a strong interest in the First Amendment implications of class certification in cases involving expressive technologies and the transformative use of the internet as a medium of knowledge and information. This case implicates novel questions about how courts manage large-scale copyright claims against developers of generative artificial intelligence ("GenAI") services. These questions could significantly affect expressive and informational innovation in the digital economy. NetChoice submits this brief to urge caution before allowing a sweeping class action that would chill lawful development and use of expressive GenAI technologies.

---

[1] No counsel for any party authored this brief in whole or in part, and no entity or person, aside from amicus curiae, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E). The Parties have consented to the filing of this amicus brief. *See* Fed. R. App. P. 29(a)(2); Cir. R. 29-3.

INTRODUCTION

Generative artificial intelligence ("GenAI") is a novel and powerful medium of expression and knowledge. People use it to ask questions, receive answers, draft letters, write computer software, receive editorial feedback, translate languages, and more. Users input requests seeking information, creative assistance, or analytical insights. GenAI systems respond by synthesizing information and generating text, code, translations, or other content tailored to users' expressive needs. This interactive process mirrors traditional forms of expression like research assistance, editorial feedback, and collaborative writing.

For users, GenAI services offer an immediately accessible way of engaging in, accessing, and creating protected First Amendment speech, ideas, and information. Questions about how copyright law and fair use should apply to these "exceedingly transformative" services thus cannot be resolved without reference to the First Amendment underpinnings of the fair use doctrine. *Bartz v. Anthropic PBC*, 2025 WL 1741691, at *5 (N.D. Cal. June 23, 2025). That makes this case unique among copyright class actions, and it makes this Court's review necessary. *See Fox v. Saginaw Cnty.*, 35 F.4th 1042, 1046 (6th Cir. 2022) (granting interlocutory review of "order present[ing] important class-integrity and First Amendment issues"); *see also Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 110 (D.C. Cir. 2017) (recognizing that "the importance of the First Amendment issue" can influence the availability of interlocutory appeal under 28 U.S.C. § 1292(b)).

2

Although copyright law and the First Amendment are often complementary, the Supreme Court has emphasized that copyright law "contains built-in First Amendment accommodations." *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003). These accommodations exist because copyright law operates as a prior restraint on speech when it prohibits certain uses of expression. *See Golan v. Holder*, 565 U.S. 302, 328 (2012). Fair use thus serves as a critical safety valve, ensuring that copyright protection does not "'stifle the very creativity which that law is designed to foster.'" *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 527 (2023) (citation omitted).

The Copyright Clause permits Congress to create incentives for authorship by granting limited rights to exclude. *See* U.S. Const. art. I, § 8, cl. 8. But those rights are subject to constitutional limits. Among them is the guarantee that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Within this system, copyright exists to promote "free expression," not to suppress it. *Eldred*, 537 U.S. at 219. That principle has special force here, where the district court's order invites a single jury to impose hundreds of billions of dollars of liability favoring millions of absent copyright owners, many of whose circumstances raise unique, highly factual questions. The prospect of such liability will chill the development of GenAI services that millions of users rely on to gain new information and ideas and to help produce their own expression.

This Court should grant the petition now, before these irreparable constitutional harms are baked into the structure of the litigation and settlement

negotiations. Rule 23(f) is a procedural vehicle that exists precisely for this purpose. And the First Amendment demands strict appellate review when procedural rulings threaten to distort or chill expressive activity. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 514 (1984).

## ARGUMENT

## I.  The Copyright Clause and the fair use doctrine safeguard First Amendment interests.

The Supreme Court has repeatedly recognized that copyright law and the First Amendment serve similar interests, because "copyright's purpose is to *promote* the creation and publication of free expression." *Eldred*, 537 U.S. at 219; *see Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) ("The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.'" (citation omitted)). The Copyright Clause allows Congress to grant authors limited rights to control reproduction of their works. U.S. Const. art. I, § 8, cl. 8. Those rights are not absolute. They exist within a constitutional framework that guarantees significant protections for free expression. U.S. Const. amend. I. As part of that framework, the Copyright Clause "contains built-in First Amendment accommodations." *Eldred*, 537 U.S. at 219.

Chief among those "First Amendment protections" is the doctrine of fair use. *Golan*, 565 U.S. at 328. That doctrine enables courts to permit uses of copyrighted works that "benefit the public," such as "teaching, research, criticism, and news reporting," without requiring permission or payment.

4

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003). The "fair use defense" thus has "constitutional pedigree" and "serves constitutional values." *Green v. United States Dep't of Just.*, 111 F.4th 81, 88 (D.C. Cir. 2024); *see Bouchat v. Baltimore Ravens Ltd. P'ship*, 737 F.3d 932, 944 (4th Cir. 2013). That makes sense, because (like the Copyright Clause) "the Copyright Act was intended to promote" the "growth in creative expression." *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1523 (9th Cir. 1992).

The fair use doctrine's constitutional underpinnings allow courts "to avoid rigid application of the copyright statute," especially when rigidity "'would stifle the very creativity which that law is designed to foster.'" *Andy Warhol Found.*, 598 U.S. at 527 (citation omitted). In other words, the fair use doctrine is "'flexible,'" *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1157 (9th Cir. 2022) (citation omitted), in order to "foster[] innovation and encourage[] iteration," *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 739 (9th Cir. 2019). At root, "[t]he doctrine is a means of balancing the need to provide individuals with sufficient incentives to create public works with the public's interest in the dissemination of information." *Hustler Mag. Inc. v. Moral Majority Inc.*, 796 F.2d 1148, 1151 (9th Cir. 1986). As the public's First Amendment "interest[s]" grow stronger, this "balance[e]" tips more heavily in favor of fair use. *Id.* Therefore, determining the First Amendment interests at stake is an inescapable element of the fair use analysis.

## II.  Users have a strong First Amendment interest in accessing generative AI services, which are tools for producing expression.

Users of GenAI services have a strong First Amendment interest in receiving the speech, information, and expression that those services generate. The First Amendment protects all forms of communication that carry expressive content, whether written, visual, or digital. *303 Creative LLC v. Elenis*, 600 U.S. 570, 587 (2023). As the Supreme Court put it, the First Amendment includes any form of communication that can convey "expressive content." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 572 (1995). That principle includes communication "conveyed over the Internet." *303 Creative*, 600 U.S. at 587. GenAI services fit easily within that description. They process expressive inputs and produce expressive outputs. Users of GenAI services seek to gain information, explore ideas, and access creative expression, all of which are core First Amendment interests. For instance, users employ GenAI to draft blog posts, write computer code, translate documents, generate marketing copy, create educational materials, grade papers, brainstorm creative projects, and analyze complex datasets. Each of these uses involves both receiving information from the AI system and using that system as a tool for creating original expression.

Users' First Amendment interests in accessing GenAI services are also protected by "the rule that information is speech." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571 (2011); *see Rubin v. Coors Brewing Co.*, 514 U.S. 476, 481 (1995) (discussing the "information on beer labels"). GenAI services allow users to

6

investigate "[f]acts . . . [which] are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs." *Sorrell*, 564 U.S. at 570. The First Amendment protects the access to information that GenAI services allow. *See First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 783 (1978) ("[T]he First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw."); *Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978) ("There is an undoubted right to gather news from any source by means within the law . . . ." (cleaned up)); Jane Bambauer, *Is Data Speech?*, 66 Stan. L. Rev. 57, 86 (2014) ("[T]he First Amendment protects the right to gather information").

This "First Amendment right to 'receive information and ideas'" applies in the context of GenAI services, no less than other expressive mediums. *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) (citing *Stanley v. Georgia*, 394 U.S. 557, 564 (1969)); *see Martin v. City of Struthers*, 319 U.S. 141, 143 (1943)). That is because "'the basic principles of freedom of speech . . . , like the First Amendment's command, do not vary' when a new and different medium for communication appears." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 790 (2011) (quoting *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 503, (1952)). These basic principles encompass every step of "creating, distributing, or consuming speech." *Brown*, 564 U.S. at 792 n.1; *see Citizens United v. FEC*, 558 U.S. 310, 336 (2010) (discussing "different points in the speech process").

7

GenAI services are also a powerful tool allowing users to create their own expression. Users have a First Amendment interest in accessing this tool. As the Supreme Court held in *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, a State tax on speech-creating tools—in that case ink and paper—was invalid under the First Amendment. 460 U.S. 575, 583-85 (1983). Similarly, in *Buckley v. Valeo*, the Supreme Court recognized that First Amendment protections apply to the financing of speech—another precursor for producing speech—even when the law at issue does not regulate the content of expression directly. 424 U.S. 1, 19 (1976) (per curiam). Like paper, ink, and money, GenAI services are tools that enable individuals to create their own expression. Users have a strong First Amendment interest in retaining access to this tool and in seeing this category of tools continue to flourish and improve. *See Hill v. Colorado*, 530 U.S. 703, 726 (2000) (government cannot "entirely foreclose a[] means of communication"); Eugene Volokh, Mark A. Lemley & Peter Henderson, *Freedom of Speech and AI Output*, 3 J. Free Speech L. 651, 658 (2023), https://tinyurl.com/7yyvtmp2 ("the First Amendment protects technologies that make it easier to speak").

## III. These First Amendment interests warrant interlocutory review under Rule 23(f).

The First Amendment interests at stake in this case are exactly the kind that warrant interlocutory review under Rule 23(f). That rule allows the court of appeals to review class certification orders in "rare" but important cases where immediate review is necessary to protect legal rights or prevent

litigation from proceeding on an improper basis. *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 955 (9th Cir. 2005). This is one of those cases.

The Court should not be deterred by the fact that this case involves an interlocutory appeal. The Supreme Court has consistently held that First Amendment rights are particularly vulnerable to chilling effects that occur during litigation, not just after final judgment. *Nat'l Socialist Party of Am. v. Vill. of Skokie*, 432 U.S. 43, 44 (1977) (per curiam) ("immediate appellate review" can be necessary for "rights protected by the First Amendment"); *see Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965). Circuit courts have also recognized the importance of interlocutory review for First Amendment issues, including in class actions. *Fox*, 35 F.4th at 1046 (class action context); *see Kahl*, 856 F.3d at 110 (interlocutory appeal under 28 U.S.C. § 1292(b)). Here, the mere pendency of a certified class seeking potentially ruinous statutory damages will force settlements that will influence the contours of fair use for an entire industry before these constitutional questions can be properly adjudicated.

The district court certified a massive class that raises unresolved constitutional questions about the use of copyrighted works to train and operate GenAI systems. Whether those uses are fair and whether they are protected by the First Amendment are still contested questions. The district court erred by attempting to answer some of those questions at the class-certification stage. *See* Pet.3. In any event, *Kadrey v. Meta Platforms, Inc.* reached the opposite conclusion on materially similar facts. *See* 2025 WL 1752484, at *23 (N.D.

9

Cal. June 25, 2025). These conflicting conclusions of law from district courts in this Circuit reiterate the need for this Court to grant the petition. What's more, allowing this class certification to stand without review risks creating a template for similar massive copyright classes against other GenAI developers, potentially freezing innovation in this critical expressive technology while fundamental legal questions remain unresolved.

The Court should also grant the petition because "First Amendment freedoms need breathing space to survive." *NAACP v. Button*, 371 U.S. 415, 433 (1963). That principle applies not just to final judgments, *see Bose Corp.*, 466 U.S. at 514, but also to procedural decisions that, if unreviewed, could similarly chill speech or deter innovation. The risk is acute here, given the potential for statutory damages across millions of works and the fundamental uncertainty about how fair use and the First Amendment apply to GenAI. Because the class certification order here threatens to distort the legal landscape in ways that implicate expressive freedom, this Court should intervene and should address those questions before the class-action litigation and settlement machinery lock in. Rule 23(f) exists to prevent precisely that kind of procedural momentum from overriding substantive rights. The petition should be granted.

## Conclusion

This Court should grant the petition.

Dated: August 7, 2025          Respectfully submitted.

                               /s/ Scott A. Keller

Joshua P. Morrow               Scott A. Keller
LEHOTSKY KELLER COHN LLP        Steven P. Lehotsky
408 W. 11th Street, 5th Floor  Serena Orloff
Austin, TX 78701               Jeremy Evan Maltz
                               LEHOTSKY KELLER COHN LLP
                               200 Massachusetts Ave. NW
                               Suite 700
                               Washington, DC 20001
                               (512) 693-8350
                               scott@lkcfirm.com

                               *Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

On August 7, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

*/s/ Scott A. Keller*
Scott A. Keller

12

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number 25-4843**

I am the attorney or self-represented party.

**This brief contains 2,464 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[x] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3), as calculated under Cir. R. 32-3.

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [  ] it is a joint brief submitted by separately represented parties;

    [  ] a party or parties are filing a single brief in response to multiple briefs; or

    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s/ Scott A. Keller*     **Date** August 7, 2025

13