# EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
# RELIEF REQUESTED BY SEPTEMBER 2, 2025

## No. 25-4843

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### ANDREA BARTZ, CHARLES GRAEBER,
### and KIRK WALLACE JOHNSON, Plaintiffs-Respondents,
### v.
### ANTHROPIC PBC, Defendant-Petitioner.

On Petition for Permission to Appeal from the United States District Court
for the Northern District of California,
Case No. 3:24-cv-05417-WHA
The Honorable William H. Alsup

### DEFENDANT-PETITIONER ANTHROPIC PBC'S
### EMERGENCY MOTION FOR A STAY PENDING
### RESOLUTION OF ITS RULE 23(f) PETITION

Kathleen R. Hartnett
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
khartnett@cooley.com

Ephraim A. McDowell
Alexander J. Kasner
Elias S. Kim
COOLEY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Telephone: (202) 842-7800

Daralyn J. Durie
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000

Douglas A. Winthrop
ARNOLD & PORTER KAYE
SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100

Allison Wettstein O'Neill
COOLEY LLP
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone: (858) 550-6000

*Attorneys for Defendant-Petitioner Anthropic PBC*

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3

## CIRCUIT RULE 27-3 CERTIFICATE

Pursuant to Ninth Circuit Rule 27-3, I hereby certify as follows in support of Anthropic PBC's ("Anthropic") emergency motion for a stay of proceedings below pending resolution of its Rule 23(f) petition to appeal the district court's order on class certification:

1.     The following list contains the telephone numbers, e-mail addresses, and office addresses of the attorneys for the parties.

For Plaintiffs-Respondents:

Justin A. Nelson
Alejandra C. Salinas
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
Michael Gervais (SBN 330731)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
rnath@susmangodfrey.com
mgervais@susmangodfrey.com

Jordan W. Connors
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

J. Craig Smyser
Samir Doshi
SUSMAN GODFREY L.L.P.
One Manhattan West, 51st Floor,
New York, NY 10019
Telephone: (212) 336-8330
csmyser@susmangodfrey.com
sdoshi@susmangodfrey.com

Rachel Geman
Jacob S. Miller
Danna Z. Elmasry
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
rgeman@lchb.com
jmiller@lchb.com
delmasry@lchb.com

Daniel M. Hutchinson (SBN 239458)
Jallé Dafa (SBN 290637)
Reilly T. Stoler (SBN 310761)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
rstoler@lchb.com
jdafa@lchb.com
dhutchinson@lchb.com

Betsy A. Sugar
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
222 Second Ave., #1640
Nashville, TN 37201
Telephone: (615) 313-9000
bsugar@lchb.com

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3

For Defendant-Petitioner Anthropic:

Kathleen R. Hartnett
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA  94111-4004
Telephone:  (415) 693 2000
khartnett@cooley.com

Ephraim A. McDowell
Alexander J. Kasner
Elias S. Kim
COOLEY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004-2400
Telephone:  (202) 842 7800
emcdowell@cooley.com
akasner@cooley.com
ekim@cooley.com

Allison Wettstein O'Neill
COOLEY LLP
10265 Science Center Drive
San Diego, CA  92121-1117
Telephone:  (858) 550 6000
aoneill@cooley.com

Daralyn J. Durie
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
DDurie@mofo.com

Douglas A. Winthrop
ARNOLD & PORTER KAYE
SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
Douglas.Winthrop@arnoldporter.com

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

2.     The following facts show the existence and nature of the emergency:

Under Rule 27-3, I certify that "to avoid irreparable harm relief is needed in less than 21 days" on Anthropic's motion to stay the proceedings below.   In particular, unless the Court grants a stay by **September 2, 2025**, Anthropic will face irreparable injury.

Courts in this Circuit have routinely held that a defendant suffers irreparable harm if it is compelled to spend "substantial, unrecoverable time and resources" on litigation "where an appeal may result in decertification of the class." *Romero v. Securus Techs., Inc.*, 383 F. Supp. 3d 1069, 1075 (S.D. Cal. 2019); *see, e.g.*, *Senne v. Kansas City Royals Baseball Corp.*, 2017 WL 5973487, at *3 (N.D. Cal. May 5, 2017).   Here, absent a stay, Anthropic would be forced to litigate a fast-moving, sprawling class action involving up to seven million class members.   Fact discovery is scheduled to close on August 29, 2025.   Immediately thereafter, expert discovery will commence with the disclosure of opening expert reports.   Opposition and reply reports will be disclosed over the next few weeks, and expert discovery will close on October 3.   In parallel, the parties may file motions related to fact discovery (due September 5), dispositive motions (due October 1), and motions related to expert discovery (due October 10).   Jurors will then be summoned with trial set to begin in early December 2025.   Without a stay, this intensive litigation could "result[] in a substantial waste of time and resources" if Anthropic's appeal leads to

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

"decertification of the class." *Romero*, 383 F. Supp. 3d at 1075.

In addition, proceeding with class notice absent a stay threatens Anthropic with irreparable reputational injury. Under the district court's approach, potentially millions of class members—at some unspecified time soon after September 1, 2025—will receive class notice that may later prove unfounded if the certification order is reversed on appeal. The notice would suggest to all recipients—likely including some current and potential Anthropic customers—that Anthropic engaged in wrongdoing, notwithstanding the transformative nature of Anthropic's products and the competing views by district courts in this Circuit about whether those products fairly use copyrighted works. In turn, those reputational costs "would be completely unnecessary … if the class is decertified." *Id.*

Finally, Anthropic faces potentially business-threatening liability—with possible classwide damages totaling hundreds of billions of dollars—from a class trial under the district court's present framework.

3. Anthropic filed this motion at the earliest available opportunity. On July 17, 2025, the district court issued its class-certification ruling. Pursuant to Federal Rule of Civil Procedure 23(f), Anthropic's petition for interlocutory appeal of that ruling was due to this Court 14 days later, on July 31, 2025. On July 24, 2025, Anthropic filed in the district court its motion to stay proceedings pending resolution of its (then-forthcoming) Rule 23(f) petition. ECF 272. In its motion,

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3

Anthropic alerted the district court that it would be filing its Rule 23(f) petition in this Court by July 31, 2025. The district court ordered Plaintiffs to respond to Anthropic's stay motion by noon on Monday, July 28, and for Anthropic to file its reply brief by noon on Wednesday, July 30. ECF 274; *see* ECF 275 (Plaintiffs' opposition); ECF 278 (Anthropic's reply).

Anthropic filed its Rule 23(f) Petition in this Court on July 31, 2025. CA9 Dkt. 1.1. Anthropic provided the district court with a copy of the Rule 23(f) Petition on August 1, 2025, when it was accepted for filing by this Court. ECF 283.

The district court issued its order denying Anthropic's motion for a stay on August 11, 2025. ECF 296. Anthropic diligently prepared this Emergency Motion to be filed within two court days of the district court's order.

4.    Counsel for Anthropic notified the Court of this motion via email (at Emergency@ca9.uscourts.gov), today, August 13, 2025. Counsel for Anthropic notified plaintiffs' counsel of this motion via email yesterday, August 12, 2025. Plaintiffs' counsel informed counsel for Anthropic that they opposed this Motion.

5.    I further certify that Anthropic has sought the requested relief—a stay of proceedings pending resolution of its Rule 23(f) petition—in the district court, and all grounds advanced in support thereof in this Court were submitted to the district court in Anthropic's motion to stay and its reply in support of that motion. *See* ECF 272 (motion for stay); ECF 278 (reply).

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

Dated: August 13, 2025          /s/ Kathleen R. Hartnett

                                Kathleen R. Hartnett, COOLEY LLP

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................1

BACKGROUND ...................................................................................4

ARGUMENT .....................................................................................10

I.    ANTHROPIC HAS RAISED SERIOUS LEGAL QUESTIONS ABOUT THE CLASS-CERTIFICATION ORDER AND HAS A FAIR PROSPECT OF SUCCESS ON INTERLOCUTORY REVIEW ....................................................................................11

    A.    Individualized Issues Predominate in the Sweeping Copyright Class Certified by the District Court ......................12

    B.    Anthropic's Fair-Use Defense Precludes Class Certification ...........................................................................13

    C.    Rule 23(f) Review Is Warranted Under the Death-Knell Doctrine....................................................................................15

II.    ANTHROPIC WILL BE IRREPARABLY INJURED IF THE COURT DOES NOT GRANT A STAY ..........................................16

III.    PLAINTIFFS WILL NOT BE INJURED BY A STAY....................19

IV.    THE PUBLIC INTEREST FAVORS A STAY................................21

CONCLUSION ...................................................................................23

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013)........................................................3, 15

*Brown v. Wal-Mart Stores, Inc.*,
2012 WL 5818300 (N.D. Cal. Nov. 15, 2012) ......................19, 20, 21

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ...................................3, 15, 16

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) .......................................20

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
2015 WL 4397175 (C.D. Cal. June 8, 2015)................................17, 18

*FormFactor, Inc. v. Micronics Japan Co.*,
2008 WL 361128 (N.D. Cal. Feb. 11, 2008) ..............................20

*Gray v. Golden Gate Nat'l Recreational Area*,
2011 WL 6934433 (N.D. Cal. Dec. 29, 2011)............................17, 22

*Hung v. Tribal Techs.*,
2014 WL 12812429 (N.D. Cal. Sept. 18, 2014)..........................20

*Johnson v. Merck & Co., Inc.*,
2007 WL 754882 (N.D. Cal. Mar. 8, 2007) ............................22

*Kadrey v. Meta Platforms, Inc.*,
2025 WL 1752484 (N.D. Cal. June 25, 2025)............................7, 10

*Karoun Dairies, Inc. v. Karlacti, Inc.*,
2013 WL 4716202 (S.D. Cal. Sept. 3, 2013).........................21

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) .......................................11, 19

*Nat'l ATM Council, Inc. v. Visa Inc.*,
2023 WL 4743013 (D.C. Cir. July 25, 2023).........................15

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3

## <u>TABLE OF AUTHORITIES</u>
(continued)

**Page(s)**

*Pena v. Taylor Farms Pac., Inc.*,
    2015 WL 5103157 (E.D. Cal. Aug. 31, 2015).....................................................17

*Romero v. Securus Techs., Inc.*,
    383 F. Supp. 3d 1069 (S.D. Cal. 2019) ...........................................17, 18, 19, 21

*Schneider v. YouTube, LLC*,
    674 F. Supp. 3d 704 (N.D. Cal. 2023).................................................................12

*Senne v. Kansas City Royals Baseball Corp.*,
    2017 WL 5973487 (N.D. Cal. May 5, 2017)...............................................17, 22

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).............................................................................................13

*Willcox v. Lloyds TSB Bank, PLC*,
    2016 WL 917893 (D. Haw. Mar. 7, 2016) ..................................................19, 20

**Statutes**

28 U.S.C. § 1292(b) ...................................................................................7, 9, 16

Copyright Act Section 107.....................................................................................6

**Other Authorities**

Fed. R. App. P. 8(a)(2)(A)(ii) ..............................................................................11

Fed. R. Civ. P. 23 ..........................................................................................*passim*

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3

## **INTRODUCTION**

This case involves the unprecedented and erroneous certification of possibly the largest copyright class action ever—involving up to seven million potential claimants, whose works span a century of publishing history, and potentially hundreds of billions of dollars of statutory damages—in a case against the generative AI (GenAI) company Anthropic PBC. Several pending putative class actions likewise challenge companies' use of allegedly copyrighted books to train large language models (LLMs).[1] These cases raise important fair-use questions that will establish the ground rules for the industry moving forward.

On June 23, 2025, the district court issued a summary judgment order reaching erroneous legal conclusions about fair use that starkly conflict with a summary judgment ruling in another case in the same District. And on July 17, the court certified the massive class and ordered a novel notice plan that, among other things, requires class members themselves to identify and notify additional, competing class members. The court intends to order the issuance of class notice as soon as

---

[1] *See, e.g.*, *Denial et al. v. OpenAI, Inc. et al.*, No. 25-cv-06286 (S.D.N.Y. Jul. 30, 2025), MDL No. 3143; *Bird v. Microsoft Corp.*, No. 25-cv-05282, (S.D.N.Y. June 24, 2025); *In re Mosaic LLM Litig.*, No. 24-cv-01451 (N.D. Cal. Mar. 8, 2024); *Nazemian v. NVIDIA Corp.*, No. 24-cv-01454 (N.D. Cal. Mar. 8, 2024); *Authors Guild v. OpenAI Inc.*, No. 23-cv-08292 (S.D.N.Y. Sept. 19, 2023), MDL No. 3143; *In re Google Generative AI Copyright Litig.*, No. 23-cv-03440 (N.D. Cal. July 11, 2023); *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417, (N.D. Cal. July 7, 2023); *Tremblay v. OpenAI, Inc*., No. 25-cv-03482 (S.D.N.Y. June 28, 2023), MDL No. 3143.

1

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

September 2, 2025, and to hold trial under this flawed framework in less than four months.

On July 24, 2025, Anthropic moved for a stay in the district court, including in light of its forthcoming petition for permission to appeal the class-certification order under Rule 23(f). On July 31, 2025, Anthropic filed its Rule 23(f) petition in this Court. *See* Pet.[2] And on August 11, 2025, the district court denied Anthropic's motion to stay its proceedings while this Court considered Anthropic's Petition. While the district court recognized that "this case bristles with important issues of 'fair use' under the Copyright Act" and that Anthropic may well "lose[] big" at trial, it nevertheless glossed over the many substantial Rule 23(f) arguments Anthropic has made to this Court. *See* Ex. A (ECF 296) ("Stay Order"), at 2, 5-6.

This Court should stay the proceedings below pending resolution of Anthropic's Rule 23(f) Petition and any resulting appeal. Absent the requested stay, the parties will be required to promulgate massive (potentially erroneous) class notice, engage in intensive pre-trial litigation, and potentially conduct a trial—all while this Court considers the Petition. This Court and district courts in this Circuit have not hesitated to issue stays pending resolution of Rule 23(f) petitions in similar circumstances. Anthropic respectfully requests that the Court rule on this stay

---

[2] "ECF" refers to the district court docket, No. 3:24-CV-05417-WHA. "Pet." is Anthropic's Rule 23(f) petition, which is the first entry on this Court's above-captioned docket.

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

motion by **September 2, 2025**—in time to avert the irreparable harm flowing from class notice being sent to millions of potential class members.

The applicable factors all weigh strongly in favor of a stay. First, Anthropic's Rule 23(f) Petition has—at a minimum—the required fair prospect of success. The district court "manifestly err[ed]" in its resolution of "unsettled and fundamental issue[s] of law relating to class actions." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). Specifically, the court certified a sprawling copyright class, while disregarding numerous individualized issues and purporting to resolve a key *merits* question concerning fair use, in violation of bedrock Rule 23 principles. *See* Fed. R. Civ. P. 23(b)(3); *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). And on top of that, the class-certification grant may "sound[] the death knell of the litigation for [Anthropic] because the grant [would] put considerable pressure on [it] to settle independent of the merits of the plaintiffs' claims." *Chamberlan*, 402 F.3d at 958 (citation modified).

Second, Anthropic will be irreparably injured absent a stay. If district court proceedings continue, potentially millions of third parties will receive class notice that may need to be retracted or modified substantially, creating confusion among potential class members and inflicting reputational harms on Anthropic that cannot be unwound. The parties also will be irreparably injured through their expenditure of substantial time and resources on the intensive additional litigation and potentially

3

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3

trial that will occur in the coming months absent a stay.

Third, a stay would not substantially injure Plaintiffs, who seek monetary damages that will be available if they prevail on interlocutory appeal and then at trial. Any harm flowing from a brief delay in seeking damages pales in comparison to the unrecoverable economic and reputational costs that Anthropic will incur as this case speeds through a flawed class notice toward trial.

Finally, the public interest weighs in favor of a stay. If this Court were to reverse the class-certification order, any discovery, class notice, and trial that took place during the appeal may well need to be undone or redone, rendering fruitless the time and effort of jurors, class members, the Court, and the parties. Moreover, the groundbreaking legal issues presented by this case and the many others like it should be resolved in a fair and orderly fashion by this Court *before* a class trial, which carries the specter of enormous liability for one of the smallest of the many companies that have used the same books data to develop LLMs. In short, the public interest would be well served by a stay that allows this and similar cases to proceed with appellate guidance on the governing legal standards.

## <u>BACKGROUND</u>

1. Anthropic is a leading GenAI company that has developed a family of LLMs called Claude. ECF 119-5 ¶¶ 6, 9. LLMs are text-based GenAI models trained to develop a functional understanding of how language works and then

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

generate completely new text. *Id.* Claude is a versatile LLM that assists with various tasks, including writing computer code, drafting professional emails, and analyzing business data. *Id.* ¶¶ 20-22. People worldwide use Claude for everything from curriculum planning to animal conservation efforts to drug development. *Id.* ¶¶ 23-28.

Developing LLMs requires a voluminous and diverse set of data that allows LLMs to generalize beyond specific inputs and produce creative and useful outputs. *Id.* ¶¶ 38, 40. Thus, to develop its LLMs, Anthropic collected a massive body of data—trillions of "tokens," each of which roughly represents one English word—from wide-ranging sources. *Id.* ¶¶ 39, 45-53. Among other things, when Anthropic began LLM development in 2021, it downloaded certain books datasets available only on the Internet, such as "LibGen," "Books3," and "PiLiMi." *See, e.g.*, *id.* ¶¶ 48-50.

2.      Plaintiffs filed this putative class action in August 2024, alleging that Anthropic infringed their copyrights by using their books without authorization as part of Claude's training corpus. ECF 1 ¶¶ 68-74; *see* ECF 70 ¶¶ 72-78. This case is one of the many recent putative class actions filed by authors or creators against GenAI companies, including OpenAI, Meta, Google, Microsoft, NVIDIA, Databricks, Stability AI, DeviantArt, Midjourney, and Runway AI. Several of these cases were filed long before this one, but this case has proceeded so rapidly that it is

5

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

the first to reach class certification and is presently set for trial on December 1, 2025—almost a year ahead of *Plaintiffs'* initial proposal.  *See* ECF 37.

Anthropic moved for summary judgment, arguing fair use under Section 107 of the Copyright Act.  ECF 119-7.  Plaintiffs simultaneously moved to certify, *inter alia*, a "Pirated Books Class" of authors whose books Anthropic downloaded from Books3, LibGen, or PiLiMi.  ECF 121-3.  Although the district judge generally bars parties from settlement negotiations before class certification, ECF 8 at 5-6, he changed that practice here, explaining: "We are far enough along that any settlement should come sooner rather than later if the parties prefer that the undersigned judge manage the class approval process, given that the judge will likely take inactive status before the end of the year."  ECF 210.

3.    The district court granted-in-part and denied-in-part Anthropic's summary judgment motion.  The court found that using Plaintiffs' works "to train specific LLMs [was] justified as a fair use" because "[t]he technology at issue was among the most transformative many of us will see in our lifetimes."  ECF 231 ("SJ Order") at 30 (emphasis omitted).  But the court concluded *sua sponte* that the record, taken most favorably to Plaintiffs, indicated that Anthropic may have used Plaintiffs' works for another purpose—"creat[ing] a central, general-purpose library."  *Id.* at 19.  Plaintiffs had not asserted any such "library" theory, and yet the court analyzed Anthropic's supposed "retain[ing]" of "copies in its central library"

6

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

as an independent "use." *Id.* at 14. The court "denie[d] summary judgment for Anthropic that the pirated library copies must be treated as training copies." *Id.* at 31. It noted that Plaintiffs "did not move for summary judgment," and ordered "a trial on the pirated copies used to create Anthropic's central library." *Id.*

Two days later, a different court in the same district reached a divergent fair-use conclusion. *See Kadrey v. Meta Platforms, Inc.*, 2025 WL 1752484, at *1 (N.D. Cal. June 25, 2025). As here, *Kadrey* concerned whether LLM training on "pirated" datasets—including "Books3" and "LibGen"—constituted fair use. *Id.* at *6. Yet unlike here, Judge Chhabria found that fair-use doctrine protected Meta from liability. *Id.* at *23.

Anthropic has moved the district court to certify its summary judgment order for immediate appeal under 28 U.S.C. § 1292(b), or, alternatively, for reconsideration. ECF 241. That motion will be heard on August 28, 2025.

4.     On July 17, 2025, the district court granted class certification as to "[a]ll beneficial or legal copyright owners of the exclusive right to reproduce copies of any book in the versions of LibGen or PiLiMi downloaded by Anthropic," which includes the owners of up to seven million books. ECF 244 ("CC Order") at 3, 31.

In finding predominance, the court repeatedly cited its "judgment and experience" as the basis for deeming individualized issues "manageable." *Id.* at 12, 27. And, although the summary judgment order had determined that using books

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

data to "train specific LLMs" was fair and left open fair use regarding the "pirate copies" for trial, SJ Order at 30-31 (emphasis omitted), the class-certification decision states "that Anthropic *is liable* for all pirated copies regardless of whether they were used for training." CC Order at 24-25 (emphasis added). Without elaboration, and citing nothing, the court stated that "[t]o the extent fair use were to recur as an issue at trial, there is no reason to believe it would not be susceptible to treatment by common evidence and common methods." *Id.* at 26.

Finally, the district court devised an unprecedented notice and claims-made process. It ordered Plaintiffs to produce by September 1, 2025, a list of every copyrighted work they plan to assert at trial, along with registration status, ownership information, and other elements, to be subject to "*Daubert* and defendant's exacting scrutiny." *Id.* at 16-17 & n.3. Presumably after Anthropic's scrutiny and challenge, the court will approve a final list, and Plaintiffs' counsel must then provide notice to all authors, publishers, and claimants whose works were downloaded, and to all major regional and university presses. *Id.* at 29-30. The court never explained how this notice and opt-out process could feasibly occur before the December 1 trial.

If trial results in liability against Anthropic, then to recover a class member must make a claim stating under oath that he owns the copyright and has served a copy of the claim form on "anyone with whom [he] has entered an agreement respecting the copyright and to any other publisher, author, or person he suspects

8

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

has any copyright interest of any type in the work." *Id.* Thus, claimants must act counter to their self-interest by identifying competing claimants to the same work post-trial, after which a court or a jury will decide competing claims (which given the size of the class, could result in thousands of disputes if even a small portion of claims are contested). *Id.*

5.      On July 24, 2025, Anthropic moved for a stay in the district court in light of its then-forthcoming Rule 23(f) petition and pending Section 1292(b) motion. A week later, Anthropic filed its Rule 23(f) Petition in this Court, asserting three independent bases for review: (1) that the district court manifestly erred regarding a fundamental issue of class-action law by certifying a sprawling copyright class action with millions of putative class members whose claims present myriad individualized inquiries; (2) that the district court manifestly erred regarding a fundamental issue of class action-law by using its class-certification ruling to purportedly resolve the merits of Anthropic's fair-use defense in order to minimize individualized issues; and (3) that the class-certification order, which contemplates potentially hundreds of billions of dollars in liability and a trial set for December 2025, places inordinate pressure on Anthropic to settle notwithstanding the merits. Plaintiffs' opposition to the Rule 23(f) Petition is due on August 14, 2025.

6.      On August 11, 2025, the district court denied Anthropic's motion for a stay, seeking to "explain" to this Court why a stay pending Anthropic's Rule 23(f)

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

Petition "would be ill-advised." Stay Order at 2. Yet the court did not address any of Anthropic's three grounds for Rule 23(f) review that formed the basis for Anthropic's requested stay. *See id.* at 5-6. Nor did the court justify its novel plan for class notice beyond the conclusory (and erroneous) statement that "the certification order addressed these concerns fully." *Id.* at 6.

The district court also rejected Anthropic's assertion of irreparable harm, caricaturing Anthropic's death-knell argument as a "doomsday calculation," without denying that Anthropic faces hundreds of billions of dollars in potential classwide damages. *Id.* The court also ignored the irreparable reputational injury that Anthropic would suffer if flawed class notice were sent to potentially millions of class members. *See id.* And the court identified no harm to Plaintiffs if a stay were granted. *See id.*

Instead, the district court devoted the substantial majority of its stay order to defending its fair-use ruling. *See id.* at 2-5. But the court did not disagree (or even acknowledge) that its fair-use ruling conflicts with the ruling of another district court in *Kadrey.*

## ARGUMENT

The Court should stay proceedings in the district court pending resolution of Anthropic's Rule 23(f) petition and any resulting appeal. This Court has repeatedly granted stays in similar circumstances. *E.g.*, *Patel v. Facebook, Inc.*, No. 18-80053,

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3

ECF 24 (9th Cir. May 29, 2018); *Ward v. Apple Inc.*, No. 18-80027, ECF 9 (9th Cir. Mar. 20, 2018); *Grabek v. Northrop Grumman*, No. 07-80129, ECF 9 (9th Cir. Sep. 28, 2007).

Anthropic's Rule 23(f) petition "does not" itself "stay proceedings in the district court unless the district judge or the court of appeals so orders." Fed. R. Civ. P. 23(f). A party may move for a stay in the court of appeals where, as here, it has first moved for a stay in the district court, and "the district court denied the motion." Fed. R. App. P. 8(a)(2)(A)(ii).

This Court assesses whether to issue a stay pending a Rule 23(f) petition based on the same four factors used to assess stay requests generally: (1) whether there is a "fair prospect" that the appeal will succeed on the merits and/or the appeal raises "serious legal questions"; (2) whether the defendant would be "irreparably injured" absent a stay; (3) whether the plaintiff would be "substantially injure[d]" if a stay is granted; and (4) "where the public['s] interest lies." *Leiva-Perez v. Holder*, 640 F.3d 962, 964-70 (9th Cir. 2011). Here, all four of these factors strongly favor a stay.

## I. ANTHROPIC HAS RAISED SERIOUS LEGAL QUESTIONS ABOUT THE CLASS-CERTIFICATION ORDER AND HAS A FAIR PROSPECT OF SUCCESS ON INTERLOCUTORY REVIEW

There is—at a minimum—a fair prospect that this Court will grant interlocutory review of the class-certification order and agree with Anthropic on at

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

least one of the serious legal questions presented, each of which will profoundly impact the entire generative AI industry.

### A. Individualized Issues Predominate in the Sweeping Copyright Class Certified by the District Court

As Anthropic's Petition explains, the district court manifestly erred by certifying a copyright class involving potentially seven million members, even though adjudication will require individualized inquiries into issues such as ownership, registration, validity, and damages. "[C]opyright claims are poor candidates for class-action treatment" because they "turn[] 'upon facts which are particular to that single claim of infringement'" and thus generally fail Rule 23(b)(3)'s predominance requirement. *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704, 717 (N.D. Cal. 2023) (citation omitted). Plaintiffs identify no precedent for a copyright class of this size, nature, or complexity.

The district court held that Plaintiffs can proceed under the theory that Anthropic infringed their works by downloading millions of books from LibGen and PiLiMi. SJ Order at 31. Anthropic vigorously disputes that theory, *see* ECF 241, but even under it, individualized issues would predominate. For example, even if a class member identified a copyright registration certificate corresponding to a downloaded work, that registration certificate may not list the work's current owner—particularly given the licensing agreements that are commonplace in the publishing industry. Pet. at 12-13. Indeed, discovery in this case revealed that two

12

EMERGENCY MOTION UNDER CIRCUIT RULE 27-3

of the three initial named plaintiffs are not even class members because they do not currently own the copyrights they assert. *Id.* And one of those plaintiffs was listed as the sole copyright owner on the original registration certificate. *Id.* Such individualized inquiries would be multiplied across a potentially seven-million-member class.

The district court brushed aside those individualized issues in its class-certification order based on its "fifty years" of general "experience." CC Order at 25. And its stay order likewise fails to engage in substance with these concerns. *See* Stay Order at 6 (asserting that "the certification order addressed these concerns fully"). That conclusory reasoning is antithetical to the "rigorous analysis" required to determine whether plaintiffs have "affirmatively demonstrate[d]" predominance. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011). Moreover, the court compounded its error through a novel process for identifying and notifying class members—which assumes that class members will act against self-interest by notifying other potential class members with competing claims after trial. Pet. at 17. That process effectively concedes that ascertaining class members now is infeasible.

## B. Anthropic's Fair-Use Defense Precludes Class Certification

As Anthropic's Petition explains, the district court manifestly erred by purporting to resolve Anthropic's fair-use defense against it in the class-certification ruling. Pet. at 20. The court's summary judgment order entered no judgment against

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

Anthropic (indeed, Plaintiffs sought none) and expressly left open for trial Anthropic's fair-use defense regarding the so-called "pirated copies" downloaded from third-party sites. SJ Order at 31; *see* Stay Order at 5 (stating that "Anthropic will have every opportunity to perfect its affirmative defense at trial"). This defense raises a host of individualized issues under the district court's framework, including how quickly Anthropic used a work for training; whether and for how long Anthropic retained the work thereafter; and the purpose of retention. *See* SJ Order at 19.

Inexplicably, the class-certification order disregards these individualized fair-use issues, stating simply that "[t]o the extent fair use were to recur as an issue at trial, there is no reason to believe it would not be susceptible to treatment by common evidence and common methods." CC Order at 26. The district court provided no support for such unidentified "common evidence" and "common methods." And it manifestly erred in certifying a class despite the individualized fair-use issues presented.

Seeking to minimize those individualized issues, the class-certification order declares that "Anthropic *is liable* for all pirated copies regardless of whether they were used for training and regardless of whether another copy of the book was bought and scanned." *Id.* at 24-25 (emphasis added); *see* Stay Order at 5. To the extent the court purported to resolve the merits of fair use and liability at class

14

certification, it manifestly erred. "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 466. Instead, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* Here, the merits of fair use are plainly not "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied," *id.*, and thus they should have played no role in the class-certification analysis.

### C. Rule 23(f) Review Is Warranted Under the Death-Knell Doctrine

Rule 23(f) review is also warranted because the class-certification grant may "sound[] the death knell of the litigation" for Anthropic by "put[ting] considerable pressure on [it] to settle independent of the merits of the plaintiffs' claims." *Chamberlan*, 402 F.3d at 958 (citation modified). Given the immense size of the class and the risk of statutory damages up to $150,000 per work, Anthropic faces hundreds of billions of dollars in potential damages liability—a tremendous amount, up to 100 times Anthropic's expected 2025 revenue, Pet. 22. *Cf. Nat'l ATM Council, Inc. v. Visa Inc.*, 2023 WL 4743013, at *4-5 (D.C. Cir. July 25, 2023) (Rule 23(f) review warranted because of extreme settlement pressure where potential treble damages exceeded Fortune 50 defendant's annual income).

The district court's order denying a stay labeled Anthropic's massive potential damages as a "doomsday calculation," Stay Order at 6, but it notably did not dispute

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3

the scope of liability Anthropic faces or explain why such liability would not place Anthropic under the "considerable" settlement pressure that triggers the death-knell doctrine, *Chamberlan*, 402 F.3d at 958. To the contrary, the district court simply remarked that "if Anthropic loses big it will be because what it did wrong was also big." Stay Order at 6.

Making matters worse, the district court has ordered this litigation (filed over a year after several similar cases) to proceed at warp speed toward a December 1, 2025, trial—almost a year ahead of *Plaintiffs'* initial proposal. ECF 37 at 8. Along the way, the district judge has taken unusual steps to press for settlement, deviating from his normal practice of barring settlement negotiations before class certification. ECF 210. And this stay motion and Anthropic's Rule 23(f) petition are the only realistic avenues for relief, given that Anthropic's motion for interlocutory appeal of the summary judgment order rests entirely within the district court's discretion, *see* 28 U.S.C. § 1292(b), and the district court has now indicated that it will likely deny relief, *see* Stay Order at 2 ("[T]he remainder of the fair use issues on which [Anthropic] failed to win summary judgment . . . should be adjudicated only after a trial."). Accordingly, there is at least a fair prospect of Rule 23(f) review under the death-knell doctrine.

## II. ANTHROPIC WILL BE IRREPARABLY INJURED IF THE COURT DOES NOT GRANT A STAY

Anthropic faces irreparable injury without a stay. Courts in this Circuit have

16

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

routinely held that a defendant suffers irreparable harm if—as here—it is compelled to spend "substantial, unrecoverable time and resources" on litigation "where an appeal may result in decertification of the class." *Romero v. Securus Techs., Inc.*, 383 F. Supp. 3d 1069, 1075 (S.D. Cal. 2019); *see, e.g.*, *Senne v. Kansas City Royals Baseball Corp.*, 2017 WL 5973487, at *3 (N.D. Cal. May 5, 2017) ("Should the Ninth Circuit reverse this Court's … Order on certification … , Defendants will suffer substantial harm if this action is not stayed pending appeal as they will have devoted very substantial time and resources on the litigation, particularly with respect to the completion of discovery, dispositive motions and trial preparation on class claims."); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2015 WL 4397175, at *3 (C.D. Cal. June 8, 2015) (monetary losses can be irreparable if "the imminence of trial" means defendants "are forced to incur much of the expense of potentially unnecessary trial-oriented litigation" pending a decision on the Rule 23(f) petition); *Pena v. Taylor Farms Pac., Inc.*, 2015 WL 5103157, at *4 (E.D. Cal. Aug. 31, 2015) (pretrial costs may be irreparable harm "when granting a motion to stay would avoid substantial, unrecoverable, and wasteful discovery costs"); *Gray v. Golden Gate Nat'l Recreational Area*, 2011 WL 6934433, at *3 (N.D. Cal. Dec. 29, 2011) (defendant "suffer[s] substantial harm" if it is compelled to spend "substantial time and resources" on litigation "and the [district court] is later reversed on the issue of class certification").

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

Fact discovery here is scheduled to close on August 29, 2025. That day, expert discovery will commence with the disclosure of opening expert reports. Opposition and reply reports will be disclosed over the next few weeks, and expert discovery will close on October 3. In parallel, the parties may file motions related to fact discovery (due September 5), dispositive motions (due October 1), and motions related to expert discovery (due October 10). Jurors will then be summoned with trial set to begin in early December 2025. Absent a stay, this intensive litigation could "result[] in a substantial waste of time and resources" if Anthropic's appeal leads to "decertification of the class." *Romero*, 383 F. Supp. 3d at 1075. And particularly where, as here, "[t]rial in this case is fast-approaching," a stay pending a Rule 23(f) petition avoids the defendant having to "expend significant resources preparing for and likely actually trying the class action," while "concurrently" litigating the Rule 23(f) appeal—which it "will have to abandon in favor of a full-blown appeal of the final judgment if the trial concludes before an interlocutory appellate decision issues." *Flo & Eddie*, 2015 WL 4397175, at *3-4.

Proceeding with class notice absent a stay also threatens Anthropic with serious and irreparable reputational injury. As soon as September 2, 2025, the district court may order class notice sent to potentially millions of class members—notice that may later prove unfounded if the certification order is reversed on appeal. The notice would suggest to all recipients—likely including some current and

18

potential Anthropic customers—that Anthropic engaged in wrongdoing, notwithstanding the transformative nature of Anthropic's products. In turn, those reputational costs "would be completely unnecessary … if the class is decertified." *Romero*, 383 F. Supp. 3d at 1075; *see Willcox v. Lloyds TSB Bank, PLC*, 2016 WL 917893, at *7 (D. Haw. Mar. 7, 2016) (holding that "premature issuance of class notice could certainly damage [a defendant's] reputation," especially because "it is not clear whether each member of the putative class is aware of the pending litigation").

Finally, Anthropic faces potentially business-threatening liability and reputational harm from a trial under the district court's present anomalous framework. Anthropic should not be subject to such irreparable harm absent appellate guidance on the proper legal rules—particularly when other courts have resolved and may continue to resolve the same fair-use questions involving the same books datasets in favor of other companies.

## III.   PLAINTIFFS WILL NOT BE INJURED BY A STAY

Unlike Anthropic, Plaintiffs will not be "substantially injure[d]" by a stay. *Leiva-Perez*, 640 F.3d at 964. The district court did not identify any harm to Plaintiffs if this case were stayed. *See* Stay Order at 5-6. And courts in this Circuit have frequently held that a mere delay in proceedings does not constitute a substantial injury to plaintiffs. *See, e.g.*, *Brown v. Wal-Mart Stores, Inc.*, 2012 WL

19

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

5818300, at *4 (N.D. Cal. Nov. 15, 2012) ("The potential delay in Plaintiff's ability to recover penalties … does not constitute a substantial injury."); *Willcox*, 2016 WL 917893, at *7 ("[I]t makes little sense to say that a decision … to briefly stay proceedings while the Ninth Circuit considers the Rule 23(f) Petition will cause [Plaintiffs] prejudice.").

That Plaintiffs will suffer no harm is particularly true where, as here, they seek monetary damages as a classwide remedy. *E.g.*, Class Certification Mot. (ECF 125) at 13 (seeking to "maximiz[e] recovery in and compensation for" Anthropic's alleged copyright infringement); *see* SJ Order at 31-32 (confirming remedy phase at trial would resolve any "resulting damages, actual or statutory"). If this Court ultimately upholds Plaintiffs' theory of liability, then any harm can be adequately remedied by damages. As this Court has explained, a "delay" in recovering "money damages" does not support an assertion of "irreparable damage." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268-69 (9th Cir. 1962); *see, e.g.*, *Hung v. Tribal Techs.*, 2014 WL 12812429, at *2 (N.D. Cal. Sept. 18, 2014); *FormFactor, Inc. v. Micronics Japan Co.*, 2008 WL 361128, at *2 (N.D. Cal. Feb. 11, 2008).

Moreover, there is a serious risk of injury to the class members if a stay is not granted before class notice is sent. If the district court's novel class-notice plan is implemented and this Court then grants review and rules for Anthropic, "[s]uch a result would require the issuance of a second curative notice to the class." *Brown*,

20

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

2012 WL 5818300, at *4.  The result would be "confusion among class members" if Plaintiffs "disseminate class notice" and this Court then "modif[ies] or decertif[ies] the class after class notice has issued." *Id.*  Courts in this Circuit have found that such a curative notice would likely be ineffective to quell the confusion in a class of only 22,000 members, *see id.*—a tiny fraction of the potentially seven-million-member class at issue here.

## IV.    THE PUBLIC INTEREST FAVORS A STAY

"[T]he public … has an interest in efficient use of judicial resources." *Romero*, 383 F. Supp. 3d at 1077; *see Brown*, 2012 WL 5818300, at *5.  Here, a stay will maximize efficiency.  Absent a stay, discovery and the class-notice process may be complete, and the trial (scheduled for December 1, 2025) may begin, before this Court resolves Anthropic's Rule 23(f) petition.  If this Court were to grant review and reverse the class-certification order, then all the work by the parties, the jurors, and district court could be wasted.  *E.g.*, *Karoun Dairies, Inc. v. Karlacti, Inc.*, 2013 WL 4716202, at *4 (S.D. Cal. Sept. 3, 2013) (granting stay pending a Ninth Circuit decision given the "hardship or inequity on behalf of all those involved—the litigants, the witnesses, the jury members, and the Court—if a stay is denied"); *Brown*, 2012 WL 5818300, at *5 (granting a stay to "prevent[] potentially wasteful work on the part of the court and the parties while the Ninth Circuit considers the serious legal question raised by Defendant's Rule 23(f) petition").  That a stay would

21

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3

disrupt the district court's "trial date and case management schedule" (Stay Order at 6), where there is no compelling reason for trial to occur so quickly, cannot outweigh the wasted resources if this Court were to reverse the class-certification order.

Moreover, even if this Court simply clarifies the class-certification issues, then discovery and trial could have to be redone under a different legal framework. And if it affirms entirely, a stay would at least allow the parties and the district court to proceed with confidence. In all events, allowing the district court proceedings to continue while appellate proceedings are pending could lead to "an inefficient use of resources," in contravention of the public interest. *Johnson v. Merck & Co., Inc.*, 2007 WL 754882, at *2 (N.D. Cal. Mar. 8, 2007) (granting stay); *see, e.g.*, *Senne*, 2017 WL 5973487, at *4 (granting stay because the Ninth Circuit's decision on appeal might make it "necessary to decide a second round of dispositive motions and conduct a second trial"); *Gray*, 2011 WL 6934433, at *3 (finding that "a stay would avoid wasting resources on a class action litigation which might be changed in scope on appeal").

The public interest would also be well served by allowing this Court to review the district court's class-certification decision before Anthropic—one of the smallest frontier GenAI companies—is subject to a trial that raises the specter of hundreds of billions of dollars in potential liability. As explained, many putative class actions against many GenAI companies based on the same conduct are working their way

22

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3

through the courts—and all will likely involve the same legal issues concerning fair-use doctrine and Rule 23. Notably, the district court's framework already conflicts with another district court that granted summary judgment to Meta for the same conduct. It does not serve the public interest to hold the class trial against Anthropic before this Court's orderly review of the important questions presented about Rule 23's application to copyright challenges against this transformative technology.

## CONCLUSION

This Court should stay proceedings in the district court pending this Court's resolution of Anthropic's Rule 23(f) Petition and any resulting appeal. Anthropic requests a ruling on this motion by **September 2, 2025**.[3]


Dated: August 13, 2025             Respectfully submitted,

                                   */s/Kathleen R. Hartnett*

                                   Kathleen R. Hartnett
                                   COOLEY LLP
                                   3 Embarcadero Center, 20th Floor
                                   San Francisco, CA 94111-4004
                                   Telephone: (415) 693 2000

                                   Ephraim A. McDowell
                                   Alexander J. Kasner
                                   Elias S. Kim
                                   COOLEY LLP

---

[3] Anthropic respectfully submits that the Court should grant a stay now given the irreparable harm that will be incurred before the Court likely acts on the Rule 23(f) petition. Anthropic reserves its right to move again for a stay, if necessary, if and when the Rule 23(f) petition is granted.

23

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

1299 Pennsylvania Avenue, N.W.
Washington, DC  20004-2400
Telephone:  (202) 842 7800

Allison Wettstein O'Neill
COOLEY LLP
10265 Science Center Drive
San Diego, CA  92121-1117
Telephone:  (858) 550 6000

Daralyn J. Durie
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000

Douglas A. Winthrop
ARNOLD & PORTER KAYE
SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100

*Counsel for Defendant-Petitioner Anthropic*

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

## <u>CERTIFICATE OF COMPLIANCE</u>

This petition complies with the page-volume limitations set out in Ninth Circuit Rule 27-1(1)(d) and 32-3 because it is 5,539 words. This petition complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Kathleen R. Hartnett*
Kathleen R. Hartnett

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**


### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 13, 2025. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated: August 13, 2025                    */s/ Kathleen R. Hartnett*

Kathleen R. Hartnett
COOLEY LLP

# EXHIBIT A

1

2

3

4

5                            UNITED STATES DISTRICT COURT

6

7                           NORTHERN DISTRICT OF CALIFORNIA

8

9    ANDREA BARTZ and KIRK WALLACE
     JOHNSON, individually, and ANDREA                No.  C 24-05417 WHA
10   BARTZ, INC., CHARLES GRAEBER, and
     MJ + KJ, INC., individually and as
11   representatives of the class,

12              Plaintiffs,                            **ORDER DENYING**
                                                      **MOTION TO STAY**
13          v.

14   ANTHROPIC PBC,

15              Defendant.

16   _____

17                                 **INTRODUCTION**

18          Anthropic wants immediate, "meaningful appellate review," skipping over the trial part

19   altogether.  In aid thereof, it also seeks an immediate stay of all further proceedings in the

20   district court.  A stay is denied.

21                                  **STATEMENT**

22          This civil action commenced a year ago.  The case management order set deadlines for

23   class certification and summary judgment motions, and a trial date of December 1, 2025.

24   Anthropic asked for leave to file a summary judgment motion prior to class certification.  Both

25   motions were allowed to proceed in parallel, more or less.  Both have now been granted in part.

26          As for its partial loss on its summary judgment motion, Anthropic has noticed a hearing

27   to certify that loss (the pirated library part) for interlocutory appeal under Section 1292(b).  As

28   for its loss on class certification, Anthropic already has petitioned for review under Rule 23(f).

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

The immediate motion seeks a complete stay pending resolution of both. The Rule 23(f) petition before our court of appeals states that the instant motion has been briefed but not ruled upon and that, "absent a district court stay, Anthropic will move expeditiously for a stay from" the appeals court (at 9). To assist the court of appeals, this order now explains why a stay would be ill-advised.

## ANALYSIS

### 1. SUCCESS ON THE MERITS?

#### A. REVIEW OF THE FAIR USE ORDER VIA SECTION 1292(b)?

This order agrees that this case bristles with important issues of "fair use" under the Copyright Act. Anthropic already has prevailed on some of those issues at summary judgment against named plaintiffs. But the remainder of the fair use issues on which it failed to win summary judgment (the pirated library part) should be adjudicated only after a trial so that, on appeal, our court of appeals will have the benefit of a full record and findings, rather than just the self-serving and sanitized declarations served up by Anthropic.

Anthropic argues that it has a fair prospect of success in challenging the district court's denial of summary judgment as to Anthropic's downloading of millions of books from pirate libraries to amass its own central library of "all the books in the world."

The machinations of Anthropic's downloading of pirate libraries and its deployment of bit-torrenting to do so looms large in this case and should be fully before the jury, district judge, and court of appeals before we say the definitive extent to which this copying of pirated materials was fair or not. Similarly, the cause-and-effect relationship involved in its abandoning of bit-torrenting in favor of purchasing and scanning books for its "research library" deserves to be explained in the record. Furthermore, Anthropic recopied only *some* "subsets" of the pirated works to use for training large language models, or LLMs, but kept them *all*. Which works in its collection were actually used to train LLMs, which were not, and why were all retained? Anthropic has refused to come clean on this, even now, and for all we know, most were never used (or not solely used) to train LLMs.

Anthropic asks our court of appeals to ignore all these colorations in its piracy.  It seeks a sweeping rule, as a matter of law, that Anthropic was entitled to pirate all the copyrighted works it wanted and to keep them indefinitely so long as any part of the trove was further copied and used to train an LLM.  This proposed rule cannot be reconciled with the third statutory fair use factor, the amount and substantiality of the portion taken for the claimed purpose.  Here, we know that many books were downloaded from pirate sites with zero of their content ever being used to train an LLM.  It's the copyist's burden on fair use to show how much it copied was used and for what.  A trial record will do a much better job at getting at the truth of this than Anthropic has done so far.  We should hold a trial, let both sides make their cases, and whoever loses can then appeal on a well-developed record.  We shouldn't invert the normal appellate process to let Anthropic try to establish a sweeping rule that may or may not even fit the actual facts of our case (or of any real-world case).

Anthropic's proposed rule is, moreover, inconsistent with its own statements at oral argument.  Plaintiffs had challenged whether anyone could really pirate a book just because he purports to want to write a book review on Amazon, maybe now or maybe someday.  The district judge directed the question to Anthropic's counsel.  First, counsel acknowledged the need to inquire whether a book was objectively downloaded for a different or another purpose than the ultimate one subjectively proposed (at Tr. 53):

> You can't just bless yourself by saying I have a research purpose and, therefore, go and take any textbook you want.

Next, Anthropic's counsel explained how to inquire into whether a book was downloaded necessarily and solely for the proposed use (at 56 (emphasis added)):

> Well, in that case I would ask, you know, *did the person keep the copy afterwards*?  Did they consume it and enjoy it?  Did they have dual purposes here or were they literally a person who only downloaded [a book] to write a review [as promised]?

The fair use order quoted the first in full (at 18).  Then, it applied the next one to the record evidence drawn in favor of non-movants to reach its finding (at 19, with facts cited at 4–5):

> Anthropic did not use these copies only for training its LLM.
> Indeed, it retained pirated copies even after deciding it would not
> use them or copies from them for training its LLMs ever again.

Echoing both, the order concluded by holding Anthropic was "not entitled to an order blessing all copying 'that Anthropic ha[d] ever made after obtaining the data'" (at 31).

Anthropic further states that whether or not it was "library-building" was never at issue. Anthropic accuses the district judge of "*sua sponte* bifurcat[ing] Anthropic's *LLM training* on copyrighted books — which it deemed fair use — from Anthropic's *downloading* of those books" (Rule 23(f) Br. 18 (citation omitted)). There was no sua sponte bifurcation. As even Anthropic explains elsewhere, "Plaintiffs [in fact had] contended that Anthropic's downloading of Plaintiffs' books from unauthorized Internet sources was a 'standalone act of infringement,' notwithstanding Anthropic's transformative use of those books" (Section 1292(b) Br. 5). And, at summary judgment, Anthropic endeavored to rebut "Plaintiffs' central argument that Anthropic's purpose in downloading copies of books should be evaluated in isolation" (MSJ Reply 3). Both sides cited precedent focused on whether copies had been made for permanent "library-building," for a "mini-library," or so on, versus only for some further specific fair use. Among other record facts detailed in the order, Anthropic told third parties it was building a "research library" (at 4–5). And, in its opening briefing, Anthropic itself explained its "collection" of works as a factually distinct step preceding even the "[p]retraining" process for training LLMs (at 4–5), while repeating on reply that the distinction did not make a difference here (at 3, 14): "You have to actually look at what you're doing with the work, not what the person's intentions generally -- in our case obviously our intentions and what we're doing with the work are both transformative" (Tr. 53).

The main point is that fair use on summary judgment was "denied [as to its assertion that] pirated library copies must be treated as training copies" because Anthropic had presented a one-sided and sanitized version of how the works were downloaded into its collection, further copied, and in fact used (at 31, and 8–9). Meanwhile, even the record produced and drawn for non-movants supported that Anthropic had downloaded pirate libraries to build its own library for various further uses, only one being to make further copies for training LLMs (at 4–5, 19).

1    To this day, Anthropic has been unable or unwilling to say which of the pirated works were

2    actually used to train LLMs.  It is entirely possible, to repeat, that only a small subset of the

3    pirated works was ever so used.  If this issue were to go on appeal now under Section 1292(b),

4    our court of appeals would face the same difficulty as did the district judge.  It would have a

5    record that fails to answer some of the most fundamental factual points.

6         Anthropic's sweeping rule of law as proposed would come down to this (at 10, 12):  An

7    AI company is free to pirate copyrighted materials without ever accounting for the extent to

8    which the pirated materials were ever actually and solely used for a fair use.  Isn't it much

9    better to have a full trial and a full record before the court of appeals tackles these issues?

10                                    *          *          *

11        In its Rule 23(f) petition, Anthropic objects to the class certification order's treatment of

12   fair use issues.  It emphasizes (at 20) that the class certification order had stated it "*is* liable":

13        The summary judgment order [on fair use] makes clear that
          Anthropic is liable for all pirated copies regardless of whether they
14        were used for training and regardless of whether another copy of
          the book was bought and scanned.  To the extent a jury thinks
15        these differences should affect the amount of statutory damages the
          points can be made on a categorical basis rather than an individual
16        one.

17   (CC Order 24–25).

18        Anthropic has maintained that "it believes it will [show] upon more fulsome development

19   of an evidentiary record" that there was only one use, a fair use — training LLMs (Section

20   1292(b) Br. 14; *see also* CC Opp. 20–21).  And, the district court's orders have maintained that

21   Anthropic will have every opportunity to perfect its affirmative defense at trial, presenting

22   evidence for the jury to find the underlying facts needed for the judge to decide fair use in its

23   favor (or not) (*e.g.*, Fair Use Order 31–32; CC Order 26, 28).

24              **B.    REVIEW OF THE CLASS CERTIFICATION ORDER VIA RULE 23(f)?**

25        Anthropic next argues that it has a fair prospect of success in demonstrating the district

26   court abused its discretion in certifying a class, which remains contingent on the yet-to-be-filed

27   proposed notice form and schedule (due from both sides) and class list (from plaintiffs).  The

28

United States District Court
Northern District of California

5

1    district court's order rejected two other proposed classes, which neither side petitioned for

2    review.

3        Anthropic suggests that the district judge is "rush[ing]" this case so he can retire. It is

4    true that the district judge would like to take inactive status near the end of this year or shortly

5    thereafter. But it is not true that the district judge is rushing this case. The trial date was set

6    long ago at the initial case management conference and has not changed since. Keeping a case

7    on track is not the same as rushing the case to trial.

8        It is important for the sake of effective case management that class notice proceed as set

9    forth in the certification order to go to trial on a class basis in December. A stay would torpedo

10   the trial date and case management schedule. The expense and cost of notice will fall on

11   plaintiffs, not on Anthropic. This process can and should proceed in parallel with the court of

12   appeals's consideration of the Rule 23(f) petition.

13       Indeed, if we proceed without a stay, by Anthropic's account of the court of appeals's

14   average and even above-average schedule, the appellate court can conclude its Rule 23(f)

15   review before trial.

16       As to the other issues raised by Anthropic — such as identifying owners, notifying co-

17   owners and counterparties, and resolving any conflicts among them in our case that cannot be

18   resolved collaterally to it — the certification order addressed these concerns fully.

19       **2.    IRREPARABLE INJURY TO THE PROPONENT ABSENT STAY?**

20       Anthropic argues it will confront business-threatening injury even before our appeals

21   court completes any review, which Anthropic asserts also as a merits issue for the class

22   certification order under a topsy-turvy version of the "death knell" doctrine.

23       Anthropic's doomsday calculation is premised on every eventuality coming out

24   completely against its druthers. The crux is its assumption that Anthropic will lose and lose

25   badly at every trench, and that this will lead it to have to post a bond for appeal so large as to

26   kill the entire company. This piles assumption upon assumption. For all we know at this

27   stage, Anthropic will persuade the jury to find facts vindicating it completely (CC Order 28).

28   But if Anthropic loses big it will be because what it did wrong was also big.

**CONCLUSION**

A stay is denied. Anthropic and plaintiffs' jointly proposed notice form and schedule remain due by noon on August 15, the proposed class list remains due noon September 1, and our trial date remains scheduled — as it has been from the start — to begin December 1.

**IT IS SO ORDERED.**

Dated: August 11, 2025.

_____

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE