No. 25-4843

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**ANDREA BARTZ, CHARLES GRAEBER,
and KIRK WALLACE JOHNSON, Plaintiffs-Respondents,**
v.
**ANTHROPIC PBC, Defendant-Petitioner.**

On Petition for Permission to Appeal from the United States District Court
for the Northern District of California,
Case No. 3:24-cv-05417-WHA
The Honorable William H. Alsup

## REPLY IN SUPPORT OF PETITION FOR PERMISSION TO
## APPEAL UNDER RULE 23(f)

Kathleen R. Hartnett
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
khartnett@cooley.com

Ephraim A. McDowell
Alexander J. Kasner
Elias S. Kim
COOLEY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Telephone: (202) 842-7800

Daralyn J. Durie
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000

Douglas A. Winthrop
ARNOLD & PORTER KAYE
SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100

Allison Wettstein O'Neill
COOLEY LLP
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone: (858) 550-6000

*Attorneys for Defendant-Petitioner Anthropic PBC*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................3

    I.    The District Court Manifestly Erred in Certifying a Sweeping
        Copyright Class Where Individualized Issues Will Predominate........3

        A.    Plaintiffs Do Not Meaningfully Dispute That This Class
               Action Is Unprecedented.............................................................3

        B.    Plaintiffs Offer No Mechanism for Classwide Resolution
               of Myriad Individualized Copyright Issues ...........................5

    II.    The District Court Manifestly Erred in Certifying a Class
        Despite Anthropic's Fair-Use Defense .................................................9

        A.    Individualized Fair-Use Issues Would Predominate
               Under the District Court's Framework .....................................9

        B.    To the Extent the District Court Resolved Fair Use
               Against Anthropic at Class Certification, It Manifestly
               Erred .......................................................................................10

    III.    The Potential Damages At Stake Trigger the Death-Knell
         Doctrine ...............................................................................................11

CONCLUSION ....................................................................................13

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013) ................................................................9

*Bateman v. Am. Multi-Cinema, Inc.*,
    623 F.3d 708 (9th Cir. 2010) ...............................................12

*Briseno v. ConAgra Foods*,
    844 F.3d 1121 (9th Cir. 2017) ...............................................7

*Chamberlan v. Ford Motor Co.*,
    402 F.3d 952 (9th Cir. 2005) ...............................................11

*Kihn v. Bill Graham Archives LLC*,
    No. 20-17397, 2022 WL 18935 (9th Cir. Jan. 3, 2022)........................3

*In re Napster, Inc. Copyright Litigation*,
    No. C MDL-00-1369, 2005 WL 1287611 (N.D. Cal. June 1, 2005) ..............4, 5

*Nat'l ATM Council, Inc. v. Visa Inc.*,
    No. 21-7109, 2023 WL 4743013 (D.C. Cir. July 25, 2023)..............11

*Rachel v. Banana Republic, Inc.*,
    831 F.2d 1503 (9th Cir. 1987) ...............................................12

*Schneider v. YouTube, LLC*,
    674 F. Supp. 3d 704 (N.D. Cal. 2023) ....................................3

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)................................................................5

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..........................................................1, 6, 10

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ...............................................6

## Other Authorities

Federal Rule of Civil Procedure 23 .................................................*passim*

## INTRODUCTION

The district court certified what could be the largest copyright class action ever—potentially involving millions of claimants, whose works span a century of publishing history, and billions of dollars of statutory damages. Plaintiffs thus cannot seriously maintain that "'[t]his is the classic case for certification' under Rule 23." Answer (CA9 Dkt. 19) at 1 (quoting CC Order at 15).

As Anthropic's Petition explains, review under Federal Rule of Civil Procedure 23(f) is warranted for multiple independent reasons. First, the district court manifestly erred by ignoring the myriad individualized inquiries required to adjudicate class members' claims. Plaintiffs fail to explain why those individualized inquiries will not predominate. Instead, they repeat the court's reference to its "experience (of fifty years)," Answer at 12 (quoting CC Order at 25), which is not the "rigorous analysis" at class certification that Rule 23 requires, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

Second, the district court manifestly erred by certifying the class even though individualized fair-use issues would predominate under its (flawed) summary-judgment framework. And it compounded that error by purporting to resolve Anthropic's fair-use defense against it at class certification, in violation of Rule 23 principles. Rather than contend with those errors, Plaintiffs mischaracterize Anthropic's Petition as seeking Rule 23(f) review of "the merits of its class-wide

1

fair-use defense." Answer at 9. In fact, Anthropic's petition seeks review of the court's multiple errors under Rule 23, including its treatment of the fair-use defense at class certification.

Third, the death-knell doctrine justifies review. Plaintiffs do not dispute that Anthropic faces staggering potential liability. And contrary to their speculation, Anthropic is not immune to the real-world financial consequences of a massive potential damages award and the resulting settlement pressure. Nor does Plaintiffs' offer of a $5 billion appeal-bond cap solve the problem, as securing such a bond would pose insurmountable challenges.

As the multiple amicus briefs supporting Anthropic explain, "[t]he entire AI industry needs this Court to provide guidance." TechNet Br. 12; *accord* Netchoice Br. 3. Anthropic's conduct in this case is common across generative AI (GenAI) companies, many of which are facing similar putative class actions. Pet. 1. After all, "training AI models requires massive amounts of information, some of which may include copyrighted materials." TechNet Br. 3-4. And "because statutory damages can reach $150,000 per work with no showing of actual harm," class certification in almost any copyright case addressing GenAI technologies will impose immense pressure to "settle even untested legal claims." *Id.* Thus, "allowing this class certification to stand without review" could lead other courts to certify similar classes and "force settlements that will influence the contours of fair use for

an entire industry before" the issue "can be properly adjudicated" by this Court. Netchoice Br. 9-10; *accord* Foundation for American Innovation Br. 9. This Court's immediate review under Rule 23(f) is urgently needed.

## ARGUMENT

## I. THE DISTRICT COURT MANIFESTLY ERRED IN CERTIFYING A SWEEPING COPYRIGHT CLASS WHERE INDIVIDUALIZED ISSUES WILL PREDOMINATE

Copyright class actions are rare because proving infringement requires numerous individualized showings. This case is a prime illustration. Plaintiffs offer no example of a copyright class action of this size and complexity. The district court manifestly erred in certifying this unprecedented class.

### A. Plaintiffs Do Not Meaningfully Dispute That This Class Action Is Unprecedented

Plaintiffs do not dispute that the district court certified what could be the largest copyright class ever. Pet. 1. Nor do they meaningfully respond to the courts that have explained that "copyright claims are poor candidates for class-action treatment" because "[e]very copyright claim turns 'upon facts which are particular to that single claim of infringement'" and "is also subject to defenses that require their own individualized inquiries." *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704, 717 (N.D. Cal. 2023); *see Kihn v. Bill Graham Archives LLC*, No. 20-17397, 2022 WL 18935, at *2 (9th Cir. Jan. 3, 2022) (reversing certification of copyright class action in Rule 23(f) posture because "individual issues . . . would

predominate").

Instead, Plaintiffs claim that the district court's decision is "hardly novel" and "mundane class-action fare." Answer at 10, 12. But if that were so, Plaintiffs could presumably identify a host of analogous cases. Instead, Plaintiffs—like the district court—cite only *In re Napster, Inc. Copyright Litigation*, No. C MDL-00-1369 MHP, 2005 WL 1287611 (N.D. Cal. June 1, 2005). But *Napster* is fundamentally different than this case. Pet. 14-15. There, 27,000 music publishers, all of whom worked with the same licensing agency, sued an online platform for impermissibly distributing their works to third parties. 2005 WL 1287611, at *1-*2. *Napster* acknowledged that "proof of ownership, registration, and actual damages ultimately requires a work-by-work inquiry," *id.* at *7, and that adjudicating those "issues pertaining to tens of thousands of separate copyrighted musical compositions will present logistical difficulties," *id.* at *9. But the court certified the class because of a unique circumstance in that case: the plaintiffs' shared licensing agency possessed accurate, up-to-date records on every asserted work, which "reduc[ed], if not eliminate[d], any complications that may arise from adjudicating the individual aspects of the class members' claims." *Id.* Plaintiffs do not and cannot claim that any single agent possesses a repository of updated information here. To the contrary, this case involves potentially *millions* of unrelated works published by disparate entities over the course of a century.

4

Plaintiffs incorrectly contend (at 20 n.1) that Anthropic's distinction of *Napster* pertains only to "[a]dministrability," not predominance. In fact, the licensing agency's role in *Napster* made "the common, aggregation-enabling, issues" predominate over "the non-common, aggregation-defeating, individual issues," *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016), by allowing for classwide "adjudicat[ion of] the individual aspects of the class members' claims," *Napster*, 2005 WL 1287611, at *9. In any event, whether viewed through the lens of predominance or superiority, the presence of a single shared licensing agency with accurate, up-to-date records is what enabled class certification in *Napster* and what is missing (among other things) here.

### B. Plaintiffs Offer No Mechanism for Classwide Resolution of Myriad Individualized Copyright Issues

Plaintiffs acknowledge that "[c]opyright claims are sometimes unsuitable for class treatment," but assert that this case is different because of a supposed "'common course of conduct' by the defendant"—namely, Anthropic's "downloading" of books "in bulk." Answer at 17-18 (citation omitted). But Anthropic's downloading is only one of several steps in the copyright-infringement analysis. Even if a class member can show that Anthropic downloaded a file that appears to correspond to a particular book, she would still need to present evidence that: (1) the downloaded file contains more than a de minimis portion of the book's copyrighted text; (2) she is a legal or beneficial owner of the copyright; and (3) the

copyright is registered and valid. Pet. 10-12. Anthropic would then be entitled to present rebuttal evidence on each of those elements. *Id.* And if the class member were able to establish liability, the parties would present evidence about the proper amount of damages. Thus, even assuming that there is "a common nucleus of facts concerning" Anthropic's downloading, "too many individual issues" remain to satisfy Rule 23(b)(3). *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001) (citation omitted).

The district court glossed over the individualized issues by relying on its generalized "experience (of fifty years)," CC Order at 25, as opposed to a record-based showing that certification is warranted. That cursory treatment is not the "rigorous analysis" that Rule 23 requires. *Wal-Mart*, 564 U.S. at 351. And, as Plaintiffs acknowledge, Rule 23(f) review may be warranted when—as here—a court fails to "apply the correct 'Rule 23 standard.'" Answer at 18 (citation omitted).

Plaintiffs' Answer does not supply any "rigorous analysis" either. Most glaringly, Plaintiffs disregard the millions of individualized copyright-ownership inquiries that will predominate if this case proceeds as a class action. Indeed, the experience of the named Plaintiffs vividly illustrates the point: Discovery revealed that *two of the three* initial Plaintiffs were neither legal nor beneficial owners of the copyrights they asserted. Pet. 12-13. Plaintiffs offer no reason to believe such fact-specific ownership questions will be anomalous. Because assignments and licensing

6

agreements permeate the publishing industry, the copyright owner listed on a book's original registration certificate will frequently not be the legal or beneficial owner at the time a copyright suit is adjudicated. *See* Authors Alliance Br. 5-6. Plaintiffs cannot credibly argue that resolution of these "copyright-ownership issues" can be "streamlined" when those very issues barred two of the original plaintiffs from the class. Answer at 20 (citation omitted).

Plaintiffs incorrectly assert (at 23) that *Briseno v. ConAgra Foods*, 844 F.3d 1121 (9th Cir. 2017), "disposes of Defendant's ownership concerns." But *Briseno* was a class action asserting *false-advertising* claims, and thus did not require any proof of ownership—much less the complex ownership inquiry here. Plaintiffs also observe that under *Briseno*, "uncertainty in identifying class members" does not preclude class certification. Answer at 20. But Anthropic's point is not simply that identifying class members will be "administrative[ly] [in]feasibl[e]." *Briseno*, 844 F.3d at 1125. It is that individualized ownership issues defeat predominance, because copyright ownership is an element of class members' *substantive claims*. In any event, *Briseno* emphasizes that a defendant must "receive a fair opportunity to present its defenses when putative class members actually come forward." *Id.* at 1132 (citation omitted). That is what the district court denied Anthropic here, by allowing Plaintiffs to submit a list of purported *prima facie* claims for millions of class members "as evidence at trial," CC Order at 17, while preventing Anthropic

from scrutinizing each claim through discovery, Pet. 16.

Plaintiffs further contend that the district court's novel notice procedures will "prevent" ownership disputes "from becoming a problem." Answer at 20 (citation omitted). But those procedures rely on claiming class members to notify other interested parties *after* class notice and trial have already occurred. CC Order at 30. Like the district court, Plaintiffs cite neither precedent for such a procedure nor support for the dubious assumption that class members will act against self-interest by rigorously identifying competing claimants. Pet. 16. Thus, far from making "ownership issues manageable," Answer at 21, the court's misguided notice procedures "vastly underestimate[] the potential for [ownership] dispute[s]" and the possibility of countless "mini-trials to sort out these issues," Authors Alliance Br. 8.

Finally, Plaintiffs erroneously contend that the degree of copying and measure of damages are "now undisputed commonalities." Answer at 11. As the Petition explains (at 13), much of the LibGen and PiLiMi metadata is missing or erroneous, so class members cannot simply rely on it to show that Anthropic downloaded files containing the text of their works. And proving damages will also require fact-intensive inquiries, *contra* Answer at 27-28—including into any revenue the class member lost or profits Anthropic gained from Anthropic's alleged infringement of that class member's work. Pet. 11.

8

## II.   THE DISTRICT COURT MANIFESTLY ERRED IN CERTIFYING A CLASS DESPITE ANTHROPIC'S FAIR-USE DEFENSE

Plaintiffs misstate Anthropic's argument on the second question presented, Pet. 1, claiming (at 9) that the Petition "argues the merits of [Anthropic's] class-wide fair-use defense." It does not. Anthropic *accepts* the district court's fair-use framework for purposes of the Petition and shows that the framework itself *precludes class certification under Rule 23*. Under that framework, Anthropic's fair-use defense would turn on largely individualized inquiries—such as how quickly Anthropic used a work for training, whether and for how long Anthropic retained the work, and the purpose of retention. Pet. 19. But, to minimize those inquiries, the class-certification order purports to categorically reject Anthropic's fair-use defense—in violation of bedrock Rule 23 principles precluding courts from addressing merits issues at class certification. *Id.* at 20 (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)).

### A.   Individualized Fair-Use Issues Would Predominate Under the District Court's Framework

Plaintiffs incorrectly argue that Anthropic has "reverse[d] course" by first arguing at summary judgment that "the facts underlying its fair-use defense were common" and now arguing that fair use presents individualized issues. Answer at 24. There is no inconsistency in Anthropic's arguments. Anthropic's summary-judgment argument rested on the premise that its transformative purpose in using

9

copyrighted works categorically rendered its use fair. The district court rejected that argument, instead parsing Anthropic's downloading of books from its other training-related activity and subjecting it to a different fair-use analysis. Pet. 18-19. The court then certified a downloading-related class without allowing for additional briefing in light of its summary-judgment order. Anthropic's Petition *assumes* the applicability of the court's fair-use framework and shows how it requires individualized factual inquiries that will "vary work to work." *Id.* at 19. Plaintiffs' focus on Anthropic's preferred fair-use framework—rather than the one the court has actually adopted—is thus beside the point.

Plaintiffs also ask (at 25) this Court to defer to the district court's conclusory assertion that "there is no reason to believe that [fair use] would not be susceptible to treatment by common evidence and common methods." CC Order at 26. But the court's one-sentence assertion of common evidence and methods—devoid of any citation or explanation—is the opposite of the required "rigorous analysis." *Wal-Mart*, 564 U.S. at 350-51. That manifest legal error warrants no deference.

### B. To the Extent the District Court Resolved Fair Use Against Anthropic at Class Certification, It Manifestly Erred

Plaintiffs' Answer also confirms that the district court manifestly erred by addressing—and purportedly resolving—the merits of fair use in its class-certification order. Plaintiffs repeatedly recognize that courts at class certification may consider "[t]he merits . . . only if 'necessary to the Rule 23 issue.'" Answer at

15; *see, e.g.*, *id.* at 14. Anthropic agrees. And the district court violated that principle here by declaring for the first time at class certification that "Anthropic *is liable* for all pirated copies regardless of whether they were used for training." CC Order at 24-25 (emphasis added).

Plaintiffs insist that the district court had already resolved fair use in its summary-judgment order. Answer at 13-14. But the court did not and could not have done so because Plaintiffs "did not move for summary judgment." SJ Order at 31; *see id.* (ordering "a trial on the pirated copies used to create Anthropic's central library"). Indeed, Plaintiffs themselves acknowledge that the court did not "grant [them] summary judgment." Answer at 14. Accordingly, the court had no basis for declaring Anthropic "liable" at class certification. CC Order at 24.

## III. THE POTENTIAL DAMAGES AT STAKE TRIGGER THE DEATH-KNELL DOCTRINE

Plaintiffs' Answer confirms the basis for Anthropic's "death-knell" argument—the "risk of potentially ruinous liability" and the "considerable pressure on [Anthropic] to settle." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 957-58 (9th Cir. 2005) (citation omitted). Plaintiffs do not dispute that classwide damages could amount to billions of dollars. And they do not dispute that for almost any company, that figure would create inordinate settlement pressure.

Anthropic is no different. As its CFO explained, Anthropic is "not yet profitable" and "does not expect to be profitable in the next few years." Rao Decl.

¶ 3-4. Courts have found Rule 23(f) review justified under the death-knell doctrine when, as here, potential damages "would exceed [defendants'] annual net income." *Nat'l ATM Council, Inc. v. Visa Inc.*, No. 21-7109, 2023 WL 4743013, at *5 (D.C. Cir. July 25, 2023). In contrast, Plaintiffs' authorities stand only for the proposition that a large potential verdict does not preclude class *certification*. Answer at 28 (citing *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 721 (9th Cir. 2010)).

Plaintiffs contend (at 29) that Anthropic would not face severe settlement pressure because of its "valuation" and "large[] investors." But a valuation reflects "potential future revenue and profits"—both of which are highly speculative—not the cash a company has available today. Rao Reply Decl. (Ex. A hereto) ¶ 4. And it is "virtually impossible" that Anthropic's investors would simply cover a damages award in this case—particularly given its potential magnitude. *Id.* ¶ 6.

Finally, in an attempt to "un-ring" the "death knell," Plaintiffs offer to cap Anthropic's potential appeal bond at $5 billion. Answer at 30. But the district court—not Plaintiffs—has the "inherent discretionary authority" in setting appeal bonds. *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987). Regardless, a $5 billion cap is cold comfort, as that amount represents Anthropic's expected 2025 "revenue," not profits. Rao Decl. ¶ 3. Anthropic "expect[s] to operate at a loss of billions of dollars for 2025." *Id.* It is therefore "extremely unlikely" that Anthropic could obtain a $5 billion appeal bond. Rao Reply Decl. ¶ 5.

Accordingly, Plaintiffs' purported "stipulat[ion]," Answer at 30—far from staving off the death-knell doctrine—only confirms its applicability here.

## CONCLUSION

The Petition should be granted.

Dated: August 21, 2025            Respectfully submitted,

                                  */s/ Kathleen R. Hartnett*

                                  Kathleen R. Hartnett
                                  COOLEY LLP
                                  3 Embarcadero Center, 20th Floor
                                  San Francisco, CA  94111-4004
                                  Telephone:  (415) 693-2000

                                  Ephraim A. McDowell
                                  Alexander J. Kasner
                                  Elias S. Kim
                                  COOLEY LLP
                                  1299 Pennsylvania Avenue, N.W.
                                  Washington, DC  20004-2400
                                  Telephone:  (202) 842-7800

                                  Allison Wettstein O'Neill
                                  COOLEY LLP
                                  10265 Science Center Drive
                                  San Diego, CA  92121-1117
                                  Telephone:  (858) 550-6000

                                  Daralyn J. Durie
                                  MORRISON & FOERSTER LLP
                                  425 Market Street
                                  San Francisco, CA 94105-2482
                                  Telephone: (415) 268-7000

                                  Douglas A. Winthrop

13

ARNOLD & PORTER KAYE
SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100

*Counsel for Defendant-Petitioner Anthropic*

14

## <u>CERTIFICATE OF COMPLIANCE</u>

This petition complies with the page-volume limitations set out in Ninth Circuit Rules 27-1(1)(d) and 32-3 because it is 2,798 words.  This motion complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Kathleen R. Hartnett*
Kathleen R. Hartnett

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Ninth Circuit by using the

appellate CM/ECF system on August 21, 2025.  I certify that all participants in the

case are registered CM/ECF users and that service will be accomplished by the

appellate CM/ECF system.


Dated: August 21, 2025              */s/ Kathleen R. Hartnett*

                                    Kathleen R. Hartnett
                                    COOLEY LLP


323284666

# EXHIBIT A

No. 25-4843

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**ANDREA BARTZ, CHARLES GRAEBER,**
**and KIRK WALLACE JOHNSON, Plaintiffs-Respondents**
**v.**
**ANTHROPIC PBC, Defendant-Petitioner.**

On Petition for Permission to Appeal from the United States District Court
for the Northern District of California,
Case No. 3:24-cv-05417-WHA
The Honorable William H. Alsup

## DECLARATION OF KRISHNA RAO IN SUPPORT OF
## DEFENDANT-PETITIONER ANTHROPIC PBC'S
## REPLY IN SUPPORT OF PETITION FOR PERMISSION
## TO APPEAL UNDER RULE 23(f)

Kathleen R. Hartnett
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
(khartnett@cooley.com)

Ephraim A. McDowell
Alexander J. Kasner
Elias S. Kim
COOLEY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Telephone: (202) 842-7800

Daralyn J. Durie
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000

Douglas A. Winthrop
ARNOLD & PORTER KAYE
SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100

Allison Wettstein O'Neill
COOLEY LLP
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone: (858) 550-6000

*Attorneys for Defendant-Petitioner Anthropic PBC*

I, Krishna Rao, declare as follows:

1.      I am Chief Financial Officer for Defendant-Petitioner Anthropic PBC ("Anthropic").  I submit this Declaration in support of Anthropic's Reply in Support of Petition for Permission to Appeal Under Rule 23(f).  I have personal knowledge of the matters set forth herein, and if called upon as a witness, I could competently testify thereto.

2.      Anthropic generated less than $400 million in revenue in 2024.

3.      I have reviewed Plaintiffs' Answer to Anthropic's 23(f) Petition ("Plfs' Answer").  Plaintiffs' Answer cites to public reporting stating that "Anthropic's valuation, $61.5 billion as of March 2025, is expected to rise to $170 billion soon," and thus "[f]or Anthropic, resources are not an issue."  Plfs' Answer at 29.

4.      Plaintiffs' suggestion that a company's valuation is a proxy for its available, liquid resources is misleading, and their statement that "resources" are somehow "not an issue" for Anthropic is false.  In particular, Anthropic's valuation is not equivalent to the cash or liquid assets it has on hand.  To the contrary, Anthropic's valuation reflects the potential future revenue and profits, both of which are highly speculative and generated from Anthropic's significant investments in research and development over many years.  The valuation does not represent the current cash position or near-term cash flow of the business.  Because of its substantial investments in research and development, Anthropic is in a significant

loss-making position currently, and the company has raised capital to fund these investments and related losses.

5.    I further understand that Plaintiffs have indicated a willingness to "stipulate to an appeal bond no greater than $5 billion in the event this petition is denied." Plfs' Answer at 30.  Based on Anthropic's initial assessment and inquiries to Conway Marshall of International Sureties Ltd., Anthropic would be unable to obtain a bond without a letter of credit or cash as collateral for the bond. It is extremely unlikely that Anthropic would be able to secure a letter of credit for $5 billion, and putting $5 billion in escrow to support a bond would threaten the viability of Anthropic.  Such an amount is greater than the total revenue Anthropic currently projects to generate in all of 2025, prior to operating expenses that put the company in a significant loss-making position.

6.    I further understand that Plaintiffs have pointed to the worth of Anthropic's investors, including Google and Amazon, to say that "[f]or Anthropic, resources are not an issue."  Plfs' Answer at 3, 29.  Anthropic's investors have, to date, provided capital to Anthropic in exchange for equity and convertible securities. Based on my discussions with relevant stakeholders and my professional expertise, as well as the nature of third-party investments in Anthropic to date, it is virtually impossible that Anthropic's investors, including, without limitation, Google or Amazon, would simply shoulder the cost of a verdict in this case, particularly one

that rose to tens or hundreds of billions of dollars.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 21, 2025, at San Francisco, California.

_____
KRISHNA RAO

323294394

3