**Docket No. 25-4843**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

ANDREA BARTZ, CHARLES GRAEBER
and KIRK WALLACE JOHNSON,

*Plaintiffs-Respondents,*

v.

ANTHROPIC PBC,

*Defendant-Petitioner.*

_____

*On Petition for Permission to Appeal from the United States District Court
for the Northern District of California
No. 3:24-cv-05417-WHA · Honorable William H. Alsup*

## PLAINTIFFS-RESPONDENTS' OPPOSITION TO DEFENDANT'S EMERGENCY MOTION TO STAY

Justin A. Nelson
**SUSMAN GODFREY L.L.P**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
(713) 651-9366
jnelson@susmangodfrey.com

Rachel Geman
**LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013
(212) 355-9500

*Counsel for Plaintiffs-Respondents*
**Additional Counsel Listed on Signature Block**

 

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................. 1

BACKGROUND ............................................................................. 2

    A.    Anthropic Pirated Copyrighted Books *En Masse* ................... 2

    B.    Proceedings Below ................................................................. 3

        1.    Summary Judgment ..................................................... 3

        2.    Class Certification ....................................................... 4

        3.    The District Court Denies a Stay ................................. 6

THE STAY SHOULD BE DENIED ....................................................... 7

I.    Anthropic Fails To Show Imminent (or Any) Irreparable Harm .... 8

II.    The Remaining Considerations Weigh Against a Stay ................. 16

    A.    Anthropic Has Not Established Likelihood of Success ........ 16

        1.    Anthropic's Fair-Use Defense Is Irrelevant ............... 19

        2.    Anthropic Cannot Show Likelihood of Review or Reversal on Predominance ........................................... 21

        3.    Anthropic's Death-Knell Arguments Fail .................... 26

    B.    The Final Factors Weigh Against a Stay ............................ 27

CONCLUSION ............................................................................. 30

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Abdullah v. U.S. Sec. Assocs.*,
  731 F.3d 952 (9th Cir. 2013)................................................................. 16

*A&M Recs., Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001)............................................................. 18

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020)......................................................... 14, 16

*Am. Fed'n of Gov't Emps. v. Trump*,
  139 F.4th 1020 (9th Cir. 2025) .................................................... 11, 14

*Apache Stronghold v. United States*,
  2021 WL 12295173 (9th Cir. Mar. 5, 2021)......................................... 8

*Assembly of State of Cal. v. U.S. Dep't of Com.*,
  968 F.2d 916 (9th Cir. 1992)............................................................... 13

*Blair v. Equifax Check Servs., Inc.*,
  181 F.3d 832 (7th Cir. 1999)................................................................. 7

*BMG Music v. Gonzalez*,
  430 F.3d 888 (7th Cir. 2005)............................................................... 18

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017)............................................. 4, 5, 22, 23

*Brown v. Wal-Mart Stores, Inc.*,
  2012 WL 5818300 (N.D. Cal. Nov. 15, 2012)..................................... 10

*California v. Azar*,
  911 F.3d 558 (9th Cir. 2018)............................................................... 27

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005)................................................... 9, 16, 26

*Coinbase, Inc. v. Bielski*,
 599 U.S. 736 (2023) ................................................................ 1, 8, 9

*E. Bay Sanctuary Covenant v. Trump*,
 932 F.3d 742 (9th Cir. 2018) ............................................................ 27

*In re Eisen*,
 31 F.3d 1447 (9th Cir. 1994) ............................................................ 29

*In re Facebook Biometric Info. Priv. Litig.*,
 2018 WL 2412176 (N.D. Cal. May 29, 2018) .............................. 13, 14

*Farley v. Lincoln Ben. Life Co.*,
 2023 WL 5488426 (E.D. Cal. Aug. 24, 2023) .................................... 13

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
 2015 WL 4397175 (C.D. Cal. June 8, 2015) ...................................... 10

*Grabek v. Northrop Grumman Corp.*,
 346 F. App'x 151 (9th Cir. 2009) ...................................................... 17

*Gray v. Golden Gate Nat'l Recreational Area*,
 2011 WL 6934433 (N.D. Cal. Dec. 29, 2011) .................................... 10

*Iraheta-Martinez v. Garland*,
 12 F.4th 942 (9th Cir. 2021) ............................................................ 22

*James v. Price Stern Sloan, Inc.*,
 283 F.3d 1064 (9th Cir. 2002) .......................................................... 21

*Kadrey v. Meta Platforms, Inc.*,
 2025 WL 1752484 (N.D. Cal. June 25, 2025) .............................. 19, 20

*Landis v. N. Am. Co.*,
 299 U.S. 248 (1936) .......................................................................... 10

*Leiva-Perez v. Holder*,
 640 F.3d 962 (9th Cir. 2011) .......................................................... 8, 16

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
 676 F.3d 83 (2d Cir. 2012) ............................................................... 27

iii

*Martinez-Serrano v. I.N.S.*,
  94 F.3d 1256 (9th Cir. 1996) ............................................................ 20

*McDermott v. Palo Verde Unified Sch. Dist.*,
  638 F. App'x 636 (9th Cir. 2016) ..................................................... 28

*In re McKesson HBOC, Inc. Secs. Litig.*,
  126 F. Supp. 2d 1239 (N.D. Cal. 2000) ........................................... 28

*In re Napster, Inc. Copyright Litig.*,
  2005 WL 1287611 (N.D. Cal. June 1, 2005) ................................... 26

*Nationwide Biweekly Admin., Inc. v. Owen*,
  873 F.3d 716 (9th Cir. 2017) .............................................................. 9

*Pena v. Taylor Farms Pac., Inc.*,
  2015 WL 5103157 (E.D. Cal. Aug. 31, 2015) ................................. 10

*Rachel v. Banana Republic, Inc.*,
  831 F.2d 1503 (9th Cir. 1987) .......................................................... 15

*Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.*,
  2016 WL 4080294 (N.D. Cal. July 29, 2016) ................................. 28

*Romero v. Securus Techs., Inc.*,
  383 F. Supp. 3d 1069 (S.D. Cal. 2019) ..................................... 10, 13

*Sampson v. Murray*,
  415 U.S. 61 (1974) .............................................................................. 8

*Schneider v. YouTube, LLC*,
  674 F. Supp. 3d 704 (N.D. Cal. 2023) ....................................... 25, 26

*Senne v. Kan. City Royals Baseball Corp.*,
  2017 WL 5973487 (N.D. Cal. May 5, 2017) ................................... 10

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*,
  562 F.2d 1157 (9th Cir. 1977) .......................................................... 28

*Stockwell v. City & Cnty. of San Francisco*,
  749 F.3d 1107 (9th Cir. 2014) .......................................................... 19

*Titaness Light Shop, LLC v. Sunlight Supply, Inc.*,
   585 F. App'x 390 (9th Cir. 2014).............................................11

*United States v. Angelini*,
   607 F.2d 1305 (9th Cir. 1979).............................................21

*United States v. City of Los Angeles*,
   595 F.2d 1386 (9th Cir. 1979).............................................9

*United States v. Mitchell*,
   971 F.3d 993 (9th Cir. 2020).............................................14

*In re Urethane Antitrust Litig.*,
   768 F.3d 1245 (10th Cir. 2014).............................................23

*Van v. LLR, Inc.*,
   61 F.4th 1053 (9th Cir. 2023) .............................................21, 25

*Willcox v. Lloyds TSB Bank, PLC*,
   2016 WL 917893 (D. Haw. Mar. 7, 2016).............................................13

## STATUTES AND RULES

9th Cir. R. 27-3.............................................1, 8

28 U.S.C. § 1292(b) .............................................2, 6, 21

Fed. R. App. P. 8.............................................15

Fed. R. Civ. P. 23.............................................17, 19, 22

Fed. R. Civ. P. 23(b)(3) .............................................4

Fed. R. Civ. P. 23(f) .............1, 2, 6, 7, 9, 10, 14, 15, 16, 19, 21, 26, 29, 30

Fed. R. Civ. P. 23(f), Adv. Comm. N. to 1998 Amend.....................8, 10, 28

## OTHER AUTHORITIES

Moore's Federal Practice (3d ed. 2025).............................................7

Wright & Miller, Federal Practice & Procedure (3d ed. 2025).............25

v

Mary Cunningham, *Anthropic wins key AI copyright case, but remains on the hook for using pirated books*, CBS News (June 26, 2025), https://www.cbsnews.com/news/anthropic-ai-copyright-case-claude ........................................... 12

Forbes 2025 Global 2000 List (June 12, 2025), https://www.forbes.com/lists/global2000-united-states ..................... 15

Ryan Gould & Shirin Ghaffary, *Anthropic in Talks to Raise Up to $10 Billion in New Funding*, Bloomberg (Aug. 21, 2025), https://www.bloomberg.com/news/articles/2025-08-21/anthropic-in-talks-to-raise-up-to-10-billion-in-new-funding ............................................................................... 12

Lauren Harvey, *Copyrighted books are fair use for AI training, federal judge rules in Anthropic case*, Los Angeles Times (June 25, 2025), https://www.latimes.com/entertainment-arts/story/2025-06-25/anthropic-copyrighted-books-ai-fair-use ......................... 13

Alex Reisner, *Search LibGen, the Pirated Books Database That Meta Used to Train AI*, The Atlantic (Mar. 20, 2025), https://www.theatlantic.com/technology/archive/2025/03/search-libgen-data-set/682094 ........................................... 13

Mackenzie Sigalos, *Anthropic in talks to raise fresh capital at $170 billion valuation*, CNBC (July 29, 2025), https://www.cnbc.com/2025/07/29/anthropic-in-talks-to-raise-fresh-capital-at-170-billion-valuation.html ........................................ 15

# INTRODUCTION

Anthropic demands emergency relief under this Court's Rule 27-3. That demand would be proper only if Anthropic "needs relief within 21 days to avoid irreparable harm." Anthropic shows no irreparable harm, let alone such harm within 21 days. Anthropic primarily identifies litigation costs. But a wall of precedent holds that "litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 746 (2023).

Anthropic also asserts irreparable harm "from class notice being sent to millions of potential class members." Mot.3. But the notice form—to which Anthropic stipulated—contains only truthful information that is widely reported already. Even Anthropic's denials and defenses are included.

Anthropic's other arguments fare no better. Rather than show its Rule 23(f) class-certification challenge will prevail, Anthropic changes the subject. "Several" other cases, it urges, "challenge" the use of copyrighted books to train AI, raising "important" industry-wide "fair-use questions." Mot.1. But *this* case no longer raises such questions. The district court "grant[ed] summary judgment *for Anthropic*," holding AI-

1

training is "fair use." ECF-231 ("SJ.Order") at 31 (emphasis added). It denied summary judgment on *other* conduct, like illegally downloading millions of pirated works and retaining them indefinitely. *Id.* For good reason. Fair use requires possession of an authorized copy; it is not a license to steal books. But that's not a class-certification issue Anthropic's Rule 23(f) petition may debate. Anthropic may not appeal its (partial) loss at summary judgment unless it satisfies 28 U.S.C. §1292(b)'s certification requirement—or awaits final judgment. Anthropic cannot end-run the requirements for appellate review of merits issues by seeking a stay pending review of a Rule 23(f) petition directed to class-certification issues.

## BACKGROUND

### A. Anthropic Pirated Copyrighted Books *En Masse*

Anthropic is a multi-billion-dollar corporation focused on generative AI. SJ.Order 1; ECF-125-13. But Anthropic went beyond training AI with copyrighted works. Anthropic downloaded millions of copies of books from illegal "pirate librar[ies]" like Pirate Library Mirror ("PiLiMi") and Library Genesis ("LibGen"). ECF-244 ("Cert.Order") at 2.

2

PiLiMi's self-proclaimed purpose is to "deliberately violate … copyright law." ECF-163-10. LibGen's pirate-ship logo speaks volumes:



ECF-163-9. Anthropic's employees were "'not so gung ho'" about stealing books "'for legal reasons.'" SJ.Order 3. But Anthropic downloaded and retained pirated copies anyway, planning to "'store everything forever.'" SJ.Order 5, 19.

### B. Proceedings Below

Plaintiffs—authors of copyrighted works pirated by Anthropic—filed this copyright class-action suit. ECF-1. In its initial case-management order, the district court set trial for December 2025. ECF-46.

#### 1. Summary Judgment

Anthropic sought summary judgment, urging that using copies of copyrighted books to train AI was "protected fair use." ECF-122 at 1. The district court agreed AI-training was protected fair use. SJ.Order 13, 30-31. But the court found outright "piracy of otherwise available" books is "infringing." SJ.Order 19. Anthropic had "many" legal "places"

3

for acquiring the same titles it downloaded from LibGen and PiLiMi. SJ.Order 2. But it stole copies instead.

Anthropic also "buil[t] a research library"; it "retain[ed] copies" "'forever' for 'general purpose[s]'" beyond AI-training. SJ.Order 19, 31. The stolen works were for Anthropic's "own use – and not a transformative one." SJ.Order 19. Such outright piracy is not "fair use." SJ.Order 31.

### 2. Class Certification

The district court certified a "LibGen & PiLiMi Pirated Books Class" under Rule 23(b)(3), while denying certification of other classes. Cert.Order 31. This case was "the classic case for certification," where numerous common questions "predominate over" individual ones. Cert.Order 15 (quoting *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 nn.3-4 (9th Cir. 2017)). There is, for example, "no question Anthropic torrented" seven million files from pirate libraries. Cert.Order 15, 20. Anthropic's own employees admitted that, SJ.Order 2-3; Cert.Order 2-3, establishing a common question warranting common treatment.

4

The district court "fully" considered Anthropic's predominance concerns. Stay.Order 6. Anthropic argued that problems in metadata describing downloaded books would necessitate "individualized investigation." Cert.Order 15. The court ordered Plaintiffs to file a list of works with "complete information" like "author[s]," "publisher[s]," "copyright registration[s]," and "ISBN[s] and/or ASIN[s]." Cert.Order 16-17. Anthropic could "prove up the [list's] exceptions and errors." Cert.Order 16. And the court limited the class to works registered within five years of publication. Cert.Order 22-23. Following de-duplication and compliance with such class requirements, the September 1 list will thus comprise *far* fewer works than the seven million files Anthropic downloaded.

The court rejected Anthropic's argument that proving ownership would raise overwhelming "book-by-book factual issues." ECF-148 at 13; Cert.Order 25. Class members need not be ascertainable in advance. Cert.Order 15 (citing *Briseno*, 844 F.3d at 1124 nn.3-4). The class was limited to "actual and beneficial owners" of books with "presum[ptively] valid" copyright registrations. Cert.Order 22-23, 25. And Anthropic offered only "'speculation'" about ownership disputes. Cert.Order 25-26.

5

Finally, the court crafted notice procedures to ensure only one recovery per work. Cert.Order 30. To file a claim, class members must affirm they have notified "anyone" with a copyright interest in the work, including "any other publisher [or] author." *Id.*

Anthropic "agree[d] with Plaintiffs on the form of [class] notice." ECF-329 at 1. The form explains: "Anthropic denies [Plaintiffs'] allegations and argues that its use of downloaded books was fair"; "Anthropic denies … it did anything wrong"; and "[t]he Court has not decided who is right." ECF-319-2 at 1, 4-5.

### 3. The District Court Denies a Stay

Rebuffing the district court's invitation to seek reconsideration of the class-certification decision, ECF-248 at 1, Anthropic filed a Rule 23(f) petition, Dkt. 1, and moved the district court to stay proceedings pending its disposition, ECF-272.[1]

The district court denied the stay. Anthropic had accused the court of resolving fair-use issues in its class-certification decision. The district court disagreed: Anthropic "will have every opportunity" to present "fair

---

[1] Anthropic also sought reconsideration of the summary-judgment order or certification for immediate appeal under 28 U.S.C. §1292(b). ECF-241. Those requests remain pending.

6

use" at trial. Stay.Order 5. Anthropic's other "concerns" about the class-certification order were not likely to succeed either; each was "fully" addressed in the court's 31-page class-certification order. Stay.Order 6. Anthropic's own "account" showed ample time for this Court to "conclude its Rule 23(f) review" without a stay. *Id.* Nor was there anything "'rush[ed]'" about the scheduled trial date. *Id.*

Anthropic showed no irreparable harm either. "The expense and cost of notice will fall on plaintiffs, not on Anthropic." Stay.Order 6. Anthropic's "doomsday" concerns about business-ending liability, meanwhile, "pile[d] assumption upon assumption." *Id.*

## THE STAY SHOULD BE DENIED

Stays pending ordinary appeals are extraordinary, but stays pending Rule 23(f) petitions are especially disfavored. Rule 23(f) declares the petition itself "does not stay proceedings in the district court." Fed. R. Civ. P. 23(f). "[D]rafted to avoid delay," that language makes clear that stays should be "infrequent," *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 835 (7th Cir. 1999), and "are not favored," 5 Moore's Federal Practice § 23.88[2][d] (3d ed. 2025). To "reduce the risk [of] disrupt[ing] continuing proceedings," district court stay denials "should

weigh heavily." Fed. R. Civ. P. 23(f), Adv. Comm. N. to 1998 Amend. Anthropic meets none of the requirements for a stay, let alone emergency relief.

## I. ANTHROPIC FAILS TO SHOW IMMINENT (OR ANY) IRREPARABLE HARM

Because Anthropic seeks "emergency" relief, it must show "irreparable harm" will befall it "within 21 days." 9th Cir. R. 27-3. But Anthropic shows no irreparable harm whatsoever, much less such harm within 21 days. That is fatal to the stay request, *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011), and the emergency motion, *Apache Stronghold v. United States*, 2021 WL 12295173, at *1 (9th Cir. Mar. 5, 2021).

**A.** Anthropic urges it will be irreparably harmed by the costs of "litigat[ing]." Mot. R. 27-3 Cert. Nonsense. Under settled law, "'[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.'" *Coinbase*, 599 U.S. at 746. "Mere injuries, however substantial, in terms of time, money and energy … are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

Anthropic ignores that settled law. It hyperbolizes about a "warp speed" "rush" to trial. Mot.16; Stay.Order 6. But "[t]he trial date was set long ago at the initial case management conference and has not changed

8

since." Stay.Order 6. Keeping litigation "on track" is not irreparable harm. *Id.* Anthropic complains the "sprawling" class could include "up to seven million class members." Mot. R. 27-3 Cert. But, as Anthropic well knows, de-duplication and class requirements mean *far* fewer works will be included. *See* p. 5, *supra.* The works don't "span a century," Mot. 1: Every work must have an ISBN or ASIN, which have been issued only since 1970 and 1996, respectively. Cert.Order 4, 23.[2]

Anthropic insists that "[c]ourts"—*district courts*—"in this Circuit" have stayed cases based on litigation expenses. Mot.R.27-3 Cert.; Mot.16-17. But Anthropic ignores Supreme Court and Circuit precedent holding *appellate courts* will not consider litigation expenses "irreparable harm" when deciding whether to impose stays. *E.g., Coinbase,* 599 U.S. at 746; *United States v. City of Los Angeles,* 595 F.2d 1386, 1391 (9th Cir. 1979); *Nationwide Biweekly Admin., Inc. v. Owen,* 873 F.3d 716, 735 n.20 (9th Cir. 2017). District courts deciding to stay *their own* proceedings— as in the cases Anthropic cites (at 17)—are different; they have "inherent"

---

[2] Class size, moreover, is no basis for *emergency* relief when class size won't be known until Plaintiffs' list of class works is filed on September 1. "[A]void[ing]" interference in "'evolv[ing]'" proceedings is another reason for denying Rule 23(f) review and a stay. *Chamberlan v. Ford Motor Co.,* 402 F.3d 952, 960 (9th Cir. 2005) (per curiam).

power to control their "docket[s]," even absent traditional irreparable harm. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Anthropic recognized that difference below, urging the district court to exercise "'inherent'" stay authority to promote "'economy of time and effort.'" ECF-272 at 5 (citing *Landis*, 299 U.S. at 254). Yet Anthropic now cites district-court cases here instead of controlling appellate authority. Regardless, the district court below found a stay unwarranted under any standard, ECF-296 at 1-2, a ruling that "weigh[s] heavily," Fed. R. Civ. P. 23(f), Adv. Comm. N. to 1998 Amend. And the district court cases Anthropic cites are inapposite for still more reasons.[3]

---

[3] Two involved *already-granted* Rule 23(f) petitions. *Romero v. Securus Techs., Inc.*, 383 F. Supp. 3d 1069, 1072 (S.D. Cal. 2019); *Pena v. Taylor Farms Pacific, Inc.*, 2015 WL 5103157, at *1 (E.D. Cal. Aug. 31, 2015). In one, *both sides* filed Rule 23(f) petitions, and the district court simultaneously certified an "inextricably intertwined" commonality issue for interlocutory appeal—whether plaintiffs could rely on survey evidence—absent here. *Senne v. Kansas City Royals Baseball Corp.*, 2017 WL 5973487, at *3 & n.2 (N.D. Cal. May 5, 2017); *see Brown v. Wal-Mart Stores, Inc.*, 2012 WL 5818300, at *5 (N.D. Cal. Nov. 15, 2012) (involving statistical sampling). In still another, *Gray v. Golden Gate Nat'l Recreational Area*, 2011 WL 6934433, at *2 (N.D. Cal. Dec. 29, 2011), this Court denied review despite the stay, *Gray v. Golden Gate Nat'l Recreational Area*, No. 11-80287, Dkt. 5 (9th Cir. Feb. 17, 2012). Finally, in *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2015 WL 4397175, at *3 (C.D. Cal. June 8, 2015), the district court found the trial would occur before this Court could "consider[] and dispos[e]" of the petition

**B.**    Anthropic's second irreparable-harm theory fares still worse. Anthropic demands emergency relief by "September 2, 2025" to "avert" notice being sent to "millions."  Mot.3.  But Plaintiffs' list of class works is not due until September 1, 2025, and the list will be subject to "'*Daubert* and defendant's exacting scrutiny.'"  Mot.8 (citing Cert.Order 16-17 & n.3).  The district court has not ruled on when notice will issue. And Anthropic does not even believe millions will receive notice by September 2—it complains notice might take months longer.  Mot.8.  The idea that "millions" of notices, Mot.3, will be sent September 2, the day after submission of a class-works list (of uncertain size), is self-contradicted speculation.

Class notice will not irreparably harm Anthropic regardless. Anthropic's claim of "reputational injury," Mot.R.27-3 Cert.; Mot.18, must be "'grounded in … evidence.'"  *Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, 585 F. App'x 390, 391 (9th Cir. 2014); *see Am. Fed'n of Gov't Emps. v. Trump*, 139 F.4th 1020, 1029 (9th Cir. 2025).  Anthropic offers *no evidence* of harm—no threatened loss of customers, cancelled

─────────────────

(which concerned "unsettled" law).  The district court here found time ample and the issues pedestrian.  Stay.Order 6.

11

contracts, affected market metrics—that might result. *Despite* this widely publicized lawsuit, Anthropic is currently "nearing a deal to raise as much as $10 billion," a "megaround[]" amount even "higher than expected." Ryan Gould & Shirin Ghaffary, *Anthropic in Talks to Raise Up to $10 Billion in New Funding*, Bloomberg (Aug. 21, 2025), https:// www.bloomberg.com/news/articles/2025-08-21/anthropic-in-talks-to-raise-up-to-10-billion-in-new-funding.

Anthropic, moreover, cannot claim reputational harm from an agreed-upon class notice form, *see* ECF-329 at 1, that provides only truthful information the public has already. The notice not only describes the claims, but also explains that "Anthropic denies … that it did anything wrong" and that "[t]he Court has not decided who is right." ECF-319-2 at 1, 4-5. Anthropic, moreover, has not disputed this case's core factual allegation, as the notice describes it—the "download[ing]" of books from "two allegedly pirated online datasets." *Id.* at 1; *see* SJ.Order 2-3. Major news outlets (*e.g.*, CBS and the Los Angeles Times) have widely publicized those piracy allegations already.[4] The list of pirated

---

[4] *E.g.*, Mary Cunningham, *Anthropic wins key AI copyright case, but remains on the hook for using pirated books*, CBS News (June 26, 2025), https://www.cbsnews.com/news/anthropic-ai-copyright-case-claude;

class works will be publicly "file[d]" on September 1 anyway, Cert.Order 17, and authors can already look up whether their works were pirated using online sources, *e.g.*, Alex Reisner, *Search LibGen, the Pirated-Books Database That Meta Used to Train AI*, The Atlantic (Mar. 20, 2025), https://www.theatlantic.com/technology/archive/2025/03/search-libgen-data-set/682094. Anthropic cannot speculate about "potential" reputational injury, *e.g.*, Mot.18-19, when the information is public "already," *Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 923 (9th Cir. 1992)—and truthful anyway.

The district-court cases Anthropic invokes, *Romero*, 383 F. Supp. 3d at 1075-76, and *Willcox v. Lloyds TSB Bank, PLC*, 2016 WL 917893 (D. Haw. Mar. 7, 2016), offer no support. Neither concerned agreed-upon notices involving conceded conduct that was widely reported already. Truthful, stipulated notices cause no harm. *E.g.*, *Farley v. Lincoln Ben. Life Co.*, 2023 WL 5488426, at *6 (E.D. Cal. Aug. 24, 2023); *In re Facebook*

---

Lauren Harvey, *Copyrighted books are fair use for AI training, federal judge rules in Anthropic case*, Los Angeles Times (June 25, 2025), https://www.latimes.com/entertainment-arts/story/2025-06-25/anthropic-copyrighted-books-ai-fair-use.

13

*Biometric Info. Privacy Litig.*, 2018 WL 2412176, at *2 (N.D. Cal. May 29, 2018).

**C.** Finally, Anthropic argues that, absent a stay, an adverse jury verdict could impose "potentially business-threatening liability." Mot. R. 27-3 Cert.; Mot. 19. But Anthropic never justifies emergency, within-21-days relief for such theoretical harm. Trial is still months away. ECF-46. Nor is a non-emergency stay proper. Such stays prevent irreparable harm "likely to occur … before the appeal is … decided." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020). And "by Anthropic's account," this Court could conclude any "Rule 23(f) review before trial." Stay. Order 6.

The district court properly rejected Anthropic's prophecies of an adverse trial verdict regardless. Anthropic "piles assumption upon assumption"—"that [Anthropic] will lose and lose badly" at every turn. Stay. Order 6. That type of speculative injury falls far short of the "high[]" standard for a stay. *United States v. Mitchell*, 971 F.3d 993, 996 (9th Cir. 2020); *see Am. Fed'n*, 139 F.4th at 1029.

Nor are Anthropic's appeal rights remotely threatened. Mot. 16. Whatever the damages award (if any), Plaintiffs have agreed to cap any

appeal bond at $5 billion in the event this Court denies Anthropic's Rule 23(f) petition. Dkt. 19 at 3. Anthropic will raise double that sum shortly. *See* p. 12, *supra*. It is a tiny fraction of Anthropic's expected valuation of $170 billion. Mackenzie Sigalos, *Anthropic in talks to raise fresh capital at $170 billion valuation*, CNBC (July 29, 2025), https://www.cnbc.com/ 2025/07/29/anthropic-in-talks-to-raise-fresh-capital-at-170-billion-val uation.html. It is a drop in the bucket for Anthropic's behemoth investors, including Amazon and Google. *See* Pet. R. 26.1 Stmt.; Forbes 2025 Global 2000 List (June 12, 2025), https://www.forbes.com/ lists/global2000-united-states. The district court, moreover, has "inherent discretionary authority" to set a bond within reasonable limits, *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987), and this Court could stay the final judgment pending appeal, Fed. R. App. P. 8. Anthropic will have its day in court and, if necessary, on appeal. There is no basis to stay proceedings to prevent Plaintiffs from having their day in court as well.

## II.  THE REMAINING CONSIDERATIONS WEIGH AGAINST A STAY

Absent irreparable harm, the stay must be denied.  *Leiva-Perez*, 640 F.3d at 965.  But Anthropic cannot show the other requirement—likelihood of success—either.  *See Al Otro Lado*, 952 F.3d at 1010.  And none of the remaining considerations supports a stay.

### A.  Anthropic Has Not Established Likelihood of Success

Anthropic concedes it must show both (1) "a fair prospect" this Court will grant Rule 23(f) interlocutory review and (2) that the Court will "agree with Anthropic" after granting review.  Mot. 11-12.  Anthropic thus does not merely need to meet the demanding "abuse of discretion" standard applicable to class-certification decisions.  *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 956 (9th Cir. 2013).  Even obtaining 23(f) review requires proof of a "manifest[] erro[r]," that is "virtually certain to be reversed."  *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005) (per curiam).  For that reason, Rule 23(f) review is "rare."  *Id.* at 955.  Stays pending Rule 23(f) petitions are rarer still.  *See* pp. 7-8, *supra*.

Anthropic blinks reality when it says this Court "has repeatedly granted stays in similar circumstances."  Mot. 10.  It cites *three* unpublished orders spanning Rule 23(f)'s 27-year history; it never explains how those cases are "similar" to this one.  They aren't.  In one, the parties

16

*jointly* requested a stay, but the district court denied it without explanation. *Ward v. Apple Inc.,* No. 18-80027 (9th Cir.), Dkt. 2-1 at 2-3 (Mar. 9, 2018). In another, the district court's class-certification decision "appear[ed]" facially incorrect, and the court had failed "to make any [Rule 23] findings whatsoever"; the ruling was sufficiently problematic to require "reassignment to a different judge on remand." *Grabek v. Northrop Grumman Corp.*, 346 F. App'x 151, 153 (9th Cir. 2009). And in the last case, the district court ordered *the defendant* to "use its own service" to notify "tens of millions" of class members—a step the defendant challenged as compelled speech in violation of the First Amendment. *Patel v. Facebook, Inc.*, No. 18-80053 (9th Cir.), Dkt. 16 at 2, 16-17 (May 25, 2018). The district court there *refused to rule* on the stay. *Id.* at 8-9.

The district court's careful and timely rulings here present a stark contrast. Its class-certification decision *is* "'rigorous,'" Mot.13—spanning 31 pages, it addresses Rule 23's requirements, certifying one class while denying others. Cert.Order 31. For the class it certified, the court found "a common course of conduct" pervading the class—Anthropic's "mass downloading" of unauthorized pirated copies from

17

illegal websites—"that can be established with common evidence and methods." Cert.Order 15, 26. That "piracy of otherwise available" books can by itself establish infringement. SJ.Order 19. "Fair use" requires an initial authorized copy that can then be used fairly. But it is not a "fair use" to "download[]" unauthorized copies of copyrighted works "and ke[ep] them … until [getting] caught." *BMG Music v. Gonzalez*, 430 F.3d 888, 889 (7th Cir. 2005). The very existence of illicit "digital downloads … necessarily harms the copyright holders[]" who could otherwise "charge" for their works. *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1017 (9th Cir. 2001).

Anthropic does not contest that issue's commonality. And that was not the only "common" issue the district court identified—others abound. Cert.Order 15-17, 18-20, 22-24, 26. Ultimately, the district court found commonalities "heavily *predominate*," and any individualized issues are "manageable." Cert.Order 25, 27. It timely addressed Anthropic's request for a stay. Stay.Order 6. And, unlike the defendant in *Patel*, Anthropic claims no compelled speech in violation of its First Amendment rights. "[S]imilar circumstances" indeed. Mot.10.

18

### 1. Anthropic's Fair-Use Defense Is Irrelevant

Unable to dispute the case-specific nature of the district court's class-action analysis, Anthropic attempts to dress this case up in AI garb. Review is likely, Anthropic suggests, because this case raises "fair-use questions" important to "the entire generative AI industry." Mot.1, 12. Untrue. Fair-use questions arising from *training AI* are no longer at issue; they were resolved *in Anthropic's favor* at summary judgment. SJ.Order 11-14. This case involves *other* misconduct, including Anthropic's downloading of undeniably pirated materials from famously unlawful websites and its decision to keep those materials indefinitely. *See* pp. 3-4, *supra.* And the merits of any fair-use defense are irrelevant to Rule 23(f) review regardless. Anthropic agrees "fair use [is] plainly not 'relevant'" to Rule 23, Mot.15, and beyond this Court's jurisdiction, *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1113 (9th Cir. 2014).

Anthropic's suggestion (at 10) that the district court's *summary judgment* decision "conflicts with the ruling of another district court" in *Kadrey v. Meta Platforms, Inc.*, 2025 WL 1752484 (N.D. Cal. June 25, 2025), is thus beside the point. Confined to the "statement of the case

19

but not discussed in the body" of the motion, Anthropic's argument is "waived." *Martinez-Serrano v. I.N.S.*, 94 F.3d 1256, 1259 (9th Cir. 1996). Nor is there a relevant conflict. *Kadrey* could not conflict on class-certification issues because *Kadrey* itself says it is "*not* a class action" decision. 2025 WL 1752484, at *3 (emphasis added). Nor does it conflict on copyright law. The *Kadrey* court found insufficient evidence of non-training uses and permitted further proceedings concerning the defendant's allegedly illegal "torrenting process." *Id.* at *2-3, *12-13, *23. Here, evidence showed Anthropic downloaded pirated copies; and Anthropic's intended use extended well beyond "training its LLM." SJ.Order 19.

Anthropic attempts to smuggle its fair-use defense into class certification by accusing the district court of improperly "resolv[ing]" that defense "in the class-certification ruling." Mot.13. Anthropic quotes the class-certification order's statement that "'Anthropic is liable for all pirated copies,'" Mot.14 (emphasis omitted), but leaves off that sentence's beginning: "*The summary judgment order* makes clear that Anthropic is liable ...." Cert.Order 24 (emphasis added). The district court *itself*, moreover, rejected Anthropic's accusation. The orders partially denying

20

summary judgment and granting class certification, it ruled, "maintained that Anthropic *will have every opportunity* to perfect its affirmative defense at trial[.]" Stay.Order 5 (emphasis added). Anthropic offers no response. It ignores "[t]he rule that the trial judge is the best interpreter of his own orders." *United States v. Angelini*, 607 F.2d 1305, 1308 (9th Cir. 1979).

Anthropic doubtless wants to appeal the partial denial of its summary-judgment motion. But it cannot do so now absent certification under 28 U.S.C. § 1292(b). *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 (9th Cir. 2002). Anthropic cannot end-run that requirement by arguing the merits rather than class-certification issues under Rule 23(f).

### 2. Anthropic Cannot Show Likelihood of Review or Reversal on Predominance

The district court found that "questions of law or fact … predominate." Cert.Order 15. Challenging that finding, Anthropic urges the court gave insufficient weight to "individualized inquiries." Mot. 12. But the *existence* of individualized issues is insufficient; they must balance against and "overwhelm common ones." *Van v. LLR, Inc.*, 61 F.4th 1053, 1067 (9th Cir. 2023). Anthropic ignores that standard. It also ignores

21

the myriad "common" issues the district court identified. Cert.Order 15-17, 18-20, 22-24, 26. Anthropic cannot proclaim likely manifest error in the application of a balancing test without mentioning the test—while ignoring one side of the balance.

The only supposedly individualized issues about which Anthropic's motion actually "develop[s] … arguments" are ownership and fair use. *Iraheta-Martinez v. Garland*, 12 F.4th 942, 959 (9th Cir. 2021). Neither supports a stay.

Ownership. Anthropic urges that disputes over copyright ownership will make "ascertaining class members … infeasible." Mot.13. The argument is foreclosed by binding authority on which the district court relied—but Anthropic fails to cite. Cert.Order 15 (quoting *Briseno*, 844 F.3d at 1124, nn.3-4). In *Briseno*, this Court exhaustively addressed the effects of any uncertainty in identifying class members entitled to recovery. 844 F.3d at 1128-30. Rule 23 does "*not*" ask "whether … class members can be *ascertained* with perfect accuracy at the certification stage"; it asks "whether the defendant will receive a fair opportunity to present its defenses when putative class members actually come forward." *Id.* at 1132 (emphasis added).

22

Anthropic cannot dispute it will have that opportunity. While any disputes about ownership will likely prove rare, Cert.Order 25-26, the district court was clear that there would be only "one recovery" per work, Cert.Order 10. It agreed to hold trials (even "jury" trials), "as needed" to resolve any disputes over ownership during the claims administration process. Cert.Order 10. The court could also allow "limited discovery from absent class members" if circumstances warrant. *Briseno*, 844 F.3d at 1131 n.10. Anthropic will have the "fair opportunity" the law requires. *Id.* at 1132. Besides, Anthropic cannot claim prejudice from disputes *between* potential copyright owners. So long as the work is copyrighted and Anthropic is liable for the piracy, it has no cognizable interest in whether that recovery goes to claimant A or claimant B instead. *Id.*; *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1269 (10th Cir. 2014).

Anthropic criticizes the district court for relying on its "general" "'experience'" to find ownership issues manageable. Mot.13. But Anthropic's contrary position (then and now) rests on its own speculation. Stay.Order 6. And the judge has *particularized* experience—26 years on the bench during which he presided over some of the Nation's most high-profile copyright disputes. *E.g.*, *Oracle Am., Inc. v. Google Inc.*, No. 3:10-

23

cv-03561 (N.D. Cal.). That experience informed the court's understanding that "authors and publishers" can "work out the best way to recover" with "very few" ownership disputes. Cert.Order 12, 25-26. And the court is right. The Authors Guild and other *amici* agree that, "in virtually every case," the copyright owner will be obvious. Authors Guild Br. 9. They have detailed the "long and productive history" of authors and publishers collaborating to "address digital piracy of literary works." *Id.* at 5-7. Indeed, as the district court anticipated, class counsel are working with "Publishers' Coordination Counsel" in the case now. ECF-298 at 2.

Fair Use. Defendant urges that its "fair use" defense will devolve into individualized issues, such as "how quickly Anthropic used a work for training; whether and for how long Anthropic retained the work thereafter; and the purpose of retention." Mot. 14. But Anthropic downloaded and kept all of the works in the same way—a fact it used to its advantage at summary judgment. *See* ECF-88 at 2-3, ECF-122 at 7, 17-18. This case thus involves *class-wide* evidence that Anthropic downloaded and planned to keep "*all these copies* of pirated books in a central library or general data area '*forever*.'" Cert.Order 3 (emphasis added).

24

Anthropic's motion cites *no record evidence* that there will be work-by-work variation as to how, when, or why Anthropic used the books the way it did. That is fatal. Once a plaintiff "demonstrates that class issues exist"—as concededly happened here—the *defendant* bears the burden to "provide sufficient evidence that the individualized issues bar recovery on at least some claims." *Van*, 61 F.4th at 1066-67.

Other Considerations. Anthropic challenges the notice procedure as "novel," Mot. 13, but identifies no abuse of the district court's "great discretion" to craft such procedures, 7 Wright & Miller, Federal Practice & Procedure § 1788 (3d ed. 2025). As the Authors Guild and *amici* explain, notice will be ample—promulgated not just to publishers and individuals on the September 1 works' list, but to hundreds of thousands of author-organization members. Authors Guild Br. 13-16. "[I]t will be the rare author who will not be made aware of this action … and those few can be located proactively." *Id.* at 16.

Anthropic urges that copyright claims are ill-suited to class actions. Mot. 12. But the only case it cites, *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704 (N.D. Cal. 2023), did not involve uploading, downloading, or copying in bulk. It involved allegedly infringing video clips or

25

fragments that individuals posted on YouTube, each requiring evaluations of the "similarities" between uploaded files and allegedly infringed works, as well as fair-use defenses (*e.g.*, parody) that would differ for each work. *Schneider*, 674 F. Supp. 3d at 711, 721. Not so here. When bulk copying is involved, common issues predominate. *See In re Napster, Inc. Copyright Litig.*, 2005 WL 1287611 (N.D. Cal. June 1, 2005).

### 3. Anthropic's Death-Knell Arguments Fail

Finally, Anthropic urges that Rule 23(f) review is likely because it faces "a death-knell situation," "independent of the merits," "coupled with" a "questionable" class-certification decision. *Chamberlan*, 402 F.3d at 959; *see* Mot. 15. But the decision is not "questionable." *See* pp. 16-26, *supra*. Anthropic cannot disentangle supposed "settlement pressure" from the merits of its fair-use defense. Mot. 15; *see* p. 14, *supra*. Anthropic, moreover, is worth billions already and is raising $10 billion more now. *See* p. 12, *supra*; ECF-125-13. It does not "lack[] the resources" to litigate this case through appeal. *Chamberlan*, 402 F.3d at 960; *see* pp. 14-15, *supra*. The district court and this Court can stay any judgment on terms that protect Anthropic's appeal. And the notion that Anthropic could not raise enough capital to post a $5-billion bond—or convince

backers worth trillions, who have already invested billions, to guarantee one—is highly implausible. *See* pp. 14-15, *supra*.

## B. The Final Factors Weigh Against a Stay

Because Anthropic has not "satisfie[d] the first two factors"—irreparable harm and likelihood of success—this Court "need not dwell" on "harm to the opposing party" or "public interest[s]." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 778 (9th Cir. 2018). But the remaining factors weigh against a stay as well.

1. A stay will cause Plaintiffs serious harm. True, Plaintiffs "seek monetary damages as a classwide remedy." Mot. 19-20. But "[a]ny delay in rectifying violations of statutory rights has the potential to do real harm." *California v. Azar*, 911 F.3d 558, 577 (9th Cir. 2018). And Plaintiffs have an especially "compelling interest" in the "prompt" vindication of their rights. *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 103-04 (2d Cir. 2012). Anthropic has maintained its gargantuan illegal pirate library for over three years; it still "pa[ys] nothing" to the rightful owners of books it stole. SJ.Order 4-5, 18. Anthropic, moreover, has dragged its feet on "fundamental factual points"; "[t]o this day, Anthropic has been unable or unwilling" to identify

27

which "pirated works were actually used to train LLMs." Stay.Order 5.
The district court did not believe the case-management order should be
"torpedo[ed]" and Plaintiffs punished for Anthropic's dilatory "refus[al]
to come clean." Stay.Order 2, 6. That "should weigh heavily" here. Fed.
R. Civ. P. 23(f), Adv. Comm. N. to 1998 Amend.

Anthropic's arguments about class-member "confusion," Mot. 20-21,
are unsupported. "Such speculation … ignores the practical, legal and
commercial realities of the publishing industry." Authors Guild Br. 8.
Class members are publishers, authors sophisticated enough to obtain
copyrights, and other copyright holders. And if class certification is
reversed, "curative notice" can "remedy any confusion." *Retiree Support
Grp. of Contra Costa Cnty. v. Contra Costa Cnty.*, 2016 WL 4080294, at
*10 (N.D. Cal. July 29, 2016); *see In re McKesson HBOC, Inc. Secs. Litig.*,
126 F. Supp. 2d 1239, 1246 (N.D. Cal. 2000).

2.    The public interest favors "the prompt resolution of cases."
*McDermott v. Palo Verde Unified Sch. Dist.*, 638 F. App'x 636, 638 (9th
Cir. 2016). Indeed, absent prompt vindication, copyright "protection[s]"
cannot serve their purpose of "incentiv[izing]" art for "the public good."
*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d

1157, 1170 (9th Cir. 1977), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). District courts are best positioned to assess whether "delay can be endured." *In re Eisen*, 31 F.3d 1447, 1451 (9th Cir. 1994). The court below found it could not be.

Anthropic urges that, absent a stay, the parties' litigation efforts "could be wasted" if class certification is reversed. Mot. 21. But that simply criticizes the ordinary rule that appellate review must await final judgment. Nor will there be a "'second round'" of trial proceedings if Anthropic succeeds in its Rule 23(f) appeal. Mot. 22. Anthropic seeks *total* decertification, not a change in class definition or scope. So there would be no more class if Anthropic prevails. And if there is no "class action, there will likely be no action at all." Cert. Order 28. Besides, the trial judge found that preservation of judicial resources, and the interests of a speedy trial, favor a "full trial and a full record" necessary to "get[] at the truth" behind Anthropic's fair-use defense. Stay. Order 3, 5. That weighs heavily here.

Anthropic's invocation (at 22-23) of "important questions" surrounding generative-AI technology underscores why a stay is

29

inappropriate. As explained above, Anthropic's Rule 23(f) petition cannot affect those merits issues. And Anthropic won summary judgment on any AI issues. *See* pp. 3, 19, *supra*. Any high-profile AI-copyright suits "working their way through the courts," Mot. 22-23, thus are beside the point. The (incorrect) assertion of overlapping merits is no basis for Rule 23(f) review of class certification or a stay pending the Rule 23(f) petition.

## CONCLUSION

The motion should be denied.

Dated: August 25, 2025

Respectfully submitted,

SUSMAN GODFREY L.L.P.

*/s/ Justin A. Nelson*

JUSTIN A. NELSON

Justin A. Nelson
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com

Samir Doshi
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10019
Telephone: (212) 336-8330
sdoshi@susmangodfrey.com

30

Rohit D. Nath
Molly A. Karlin
**SUSMAN GODFREY L.L.P.**
1900 Ave. of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
rnath@susmangodfrey.com
mkarlin@susmangodfrey.com

Rachel Geman
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
rgeman@lchb.com

Daniel M. Hutchinson
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
dhutchinson@lchb.com

*Attorneys for Plaintiffs-Respondents*

31

## CERTIFICATE OF COMPLIANCE

I certify that this response brief contains 5,597 words and therefore complies with the word limitation established by the Ninth Circuit. The "word count divided by 280" equals 20 and "thus does not exceed the designated page limit," 9th Cir. R. 32-3(2), of 20 pages, 9th Cir. R. 5-2(b). This response brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it was prepared in Century Schoolbook 14-point typeface using Microsoft Office Word.

Dated:  August 25, 2025

/s/ Justin Nelson
JUSTIN A. NELSON